## STATE OF CONNECTICUT *v.* ARTHUR LEE WRIGHT
## (11087)
## (11088)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued October 1—decision released November 12, 1985

*Lauren M. Weisfeld,* special public defender, for the appellant (defendant).

*John A. Connelly,* state's attorney, with whom, on the brief, was *Maureen Norris,* legal intern, for the appellee (state).

PETERS, C. J. This case principally presents statutory and constitutional arguments arising out of the overlapping scope of two crimes, escape from custody; General Statutes § 53a-171;[1] and kidnapping in the first degree. General Statutes § 53a-92 (a) (2) (B).[2] After a jury trial, the defendant, Arthur Lee Wright, was convicted of both crimes. He appeals from those judgments.

The facts are undisputed. On July 29, 1980, the defendant was in custody in Waterbury Superior Court for proceedings relating to a pending felony charge.[3] Shortly after the defendant's arrival in court, he sud-

---

[1] "[General Statutes] Sec. 53a-171. ESCAPE FROM CUSTODY: CLASSIFICATION. (a) A person is guilty of escape from custody if he escapes from custody. (b) If a person has been arrested for, charged with or convicted of a felony, escape from such custody is a class C felony, otherwise, escape from custody is a class A misdemeanor."

[2] "[General Statutes] Sec. 53a-92. KIDNAPPING IN THE FIRST DEGREE. (a) A person is guilty of kidnapping in the first degree when he abducts another person and when: (1) His intent is to compel a third person to pay or deliver money or property as ransom, or to engage in other particular conduct or to refrain from engaging in particular conduct; or (2) he restrains the person abducted with intent to (A) inflict physicial injury upon him or violate or abuse him sexually; or (B) accomplish or advance the commission of a felony; or (C) terrorize him or a third person; or (D) interfere with the performance of a government function. . . ."

[3] The defendant was being held on several charges. He stipulated at trial that one was a felony.

denly ran from the defense table, through the back door of the courtroom, and out of the courthouse. With sheriffs in pursuit, the defendant fled to a nearby street where he encountered a woman emerging from her car. The defendant forced her back into the car and drove off with her, threatening to kill her if she did not cooperate. After having traveled a short distance, he parked the car and fled on foot. The woman was left unharmed in the car. The police apprehended the defendant on August 8, 1980, in West Haven.

On appeal, the defendant raises three issues concerning his convictions for the crimes of escape from custody and of kidnapping in the first degree. He claims that: (1) it is legally impossible to commit the crime of kidnapping in the first degree in the manner charged; (2) the trial court subjected the defendant to double jeopardy; and (3) the trial court used improper language in instructing the jury to draw no adverse inferences from the defendant's decision not to testify at trial.

I

The defendant's first claim of error is that he could not have committed kidnapping in the first degree because he lacked the necessary intent. The statutory definition of this crime requires the state to prove that the defendant "restrain[ed] the person abducted with intent to . . . accomplish or advance the commission of a felony." General Statutes § 53a-92 (a) (2) (B). The underlying felony on which the state relied was the crime of escape from custody. The defendant maintains that he lacked the requisite intent to commit the kidnapping because, having completed the escape once he had left the courthouse, he could not by abducting the victim have been acting "with intent to . . . accomplish or advance the commission of a felony."

We find the defendant's argument unpersuasive because it reads the language of General Statutes

§ 53a-92 too narrowly. It is true that the defendant had committed the crime of escape from custody as soon as he left the control of his guards. See *State* v. *Roy,* 173 Conn. 35, 45–46, 376 A.2d 391 (1977); *State* v. *Blyden,* 165 Conn. 522, 530, 338 A.2d 484 (1973). But the statutory requirement that the defendant intend to accomplish or advance the commission of a felony does not mean that the defendant must intend to perform only those acts sufficient to incur criminal liability for a felony. The intent contemplated by General Statutes § 53a-92 (a) (2) (B) is the intent to achieve the criminal objective of the felony. Thus, where escape from custody is the underlying felony, the defendant's intent to continue to elude the pursuit of custodial officers satisfies the intent requirement of § 53a-92. To be guilty of kidnapping in the first degree, a defendant need not abduct his victim at the very instant he leaves custody. He may abduct with the intent to further his escape either before he flees custody or during the period of flight immediately following his escape. Cf. *State* v. *Rogers,* 143 Conn. 167, 177, 120 A.2d 409, cert. denied, 351 U.S. 952, 76 S. Ct. 850, 100 L. Ed. 1476 (1956);[4] see *State* v. *Velicka,* 143 Conn. 368, 371, 122 A.2d 739 (1956); see also, e.g., *State* v. *Hall,* 305 N.C. 77, 83, 286 S.E.2d 552 (1982).

In this case, the defendant abducted the victim only minutes after his escape from custody. He was still running at the time and sheriffs were in hot pursuit. Commandeering the car enabled the defendant to leave the

---

[4] Where a statute defined murder in the first degree as, inter alia, "murder . . . committed in perpetrating, or in attempting to perpetrate, any arson, rape, robbery, or burglary, or injury to any person or property by means of an explosive compound"; General Statutes (1949 Rev.) § 8350; this court held that a defendant could be convicted of murder in the first degree even if he killed the victim after completing the underlying crime. *State* v. *Rogers,* 143 Conn. 167, 176–77, 120 A.2d 409, cert. denied, 351 U.S. 952, 76 S. Ct. 850, 100 L. Ed. 1476 (1956). Our present statute expressly defines as felony murder death caused by a defendant during his flight after committing the underlying felony. General Statutes § 53a-54c.

immediate vicinity of the courthouse, preventing the sheriffs and the police from immediately apprehending him. In light of these circumstances, the jury could reasonably have concluded that the defendant kidnapped the victim with the intent to advance or accomplish his felonious escape. It was therefore not error for the trial court to convict the defendant of kidnapping in the first degree.

## II

The defendant next argues that the trial court, by convicting him of both escape from custody and kidnapping in the first degree, punished him twice for the same offense and thereby violated double jeopardy provisions of the federal constitution.[5] Because the crime of kidnapping in the first degree requires the state to prove that the defendant "restrain[ed] the person abducted with intent to . . . accomplish or advance the commission of a felony"; General Statutes § 53a-92 (a) (2) (B); the defendant claims that the underlying felony, escape from custody in this case, is a lesser included offense of kidnapping in the first degree and that, therefore, he cannot constitutionally be convicted of having committed both offenses.[6] We disagree.

The double jeopardy clause of the fifth amendment to the United States constitution bars multiple punishments for crimes that arise from the same act or transaction and amount to the same offense. *Brown* v. *Ohio*,

---

[5] The defendant also claims that the dual convictions violate article first, § 8, of the Connecticut constitution. But because "he has proffered no argument that the rights afforded to him by the federal and the state constitutions are in any way distinguishable with respect to the substantive issue that he has raised . . . [w]e see no reason, on the facts of this case, independently to undertake such an analysis." *State* v. *Braxton*, 196 Conn. 685, 688 n.2, 495 A.2d 273 (1985).

[6] Although the defendant did not raise this claim at trial, we consider it here because double jeopardy questions implicate a fundamental constitutional right. *State* v. *McCall*, 187 Conn. 73, 91, 444 A.2d 896 (1982); *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973).

432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969); *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932); *State* v. *Sharpe,* 195 Conn. 651, 654, 491 A.2d 345 (1985); *State* v. *Devino,* 195 Conn. 70, 73–74, 485 A.2d 1302 (1985). Concededly, the two crimes charged in this case occurred as part of the same transaction. The only disputed question is whether escape from custody and kidnapping in the first degree are separate offenses for purposes of double jeopardy. The United States Supreme Court held in *Blockburger* that "the test to be applied to determine whether there are two offenses or only one, is whether each [statutory] provision requires proof of a fact that the other does not." *Blockburger* v. *United States,* supra, 304; see also *State* v. *Sharpe,* supra; *State* v. *Devino,* supra, 74–75; *State* v. *Frazier,* 194 Conn. 233, 238, 478 A.2d 1013 (1984); *State* v. *Goldson,* 178 Conn. 422, 424, 423 A.2d 114 (1979). In conducting this inquiry, we look only to relevant statutes, the information, and the bill of particulars, not to evidence presented at trial. *State* v. *Sharpe,* supra; *State* v. *Devino,* supra; *State* v. *McCall,* 187 Conn. 73, 90, 444 A.2d 896 (1982); *State* v. *Troynack,* 174 Conn. 89, 96–97, 384 A.2d 326 (1977); see also *Brown* v. *Ohio,* supra, 168.

An examination of these materials in this case reveals that the crimes of escape from custody and kidnapping in the first degree are distinct offenses. To convict the defendant of escape from custody, the state had to prove that the defendant fled the custody of law enforcement officers. To prove the defendant guilty of kidnapping in the first degree, the state had to establish that the defendant abducted his victim with the intent to accomplish or advance his felonious escape; it did not have to show that he actually committed the crime of escape from custody. Because each crime

requires proof of an element that the other does not, the trial court could properly punish the defendant for both crimes without offending the double jeopardy clause. The result we reach is consistent with the well established holding of *Wilson* v. *State,* 24 Conn. 57, 65 (1855), that the double jeopardy clause is not violated when a defendant is convicted of burglary and larceny charges arising out of the same transaction. See also *State* v. *Benton,* 161 Conn. 404, 411, 288 A.2d 411 (1971).

### III

The defendant also argues that the trial court denied him a fair trial by instructing the jury to draw no unfavorable inferences from his "failure to testify."[7] He contends that the word "failure" implied to the jury that the defendant had a duty to testify and that, had he testified, he would have incriminated himself.[8]

We find nothing wrong with the charge as given. The trial court used the exact language of General Statutes § 54-84 (b) which requires that "[u]nless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the

---

[7] The trial court instructed the jury on this issue as follows: "In this case, I warned you at the start and told you it was an unusual circumstance that the defendant, in the court's opinion, has waived his right to appear at the trial, he has voluntarily chosen not to appear at the trial and that you must make certain that there is no prejudice to his case by reason of his not being in this courtroom. By not appearing—of course, the accused has also failed to testify. This is his privilege against self-incrimination under the Fifth Amendment of the Constitution of the United States and Article One, Section 8 of the Constitution of the State of Connecticut, more commonly called the right to remain silent. The jury may draw no unfavorable inference from the accused's failure to testify. There can be no prejudice, speculation, conjecture or any disadvantageous thought in the jury's mind as to the fact that he is not here or that he didn't take the stand."

[8] In his brief, the defendant claimed further that the trial court erred in instructing the jury to disregard any previous misconduct by the defendant. The defendant conceded this issue at oral argument and we do not consider it here.

accused's failure to testify." If the defendant felt that the word "failure" had unfavorable connotations, he could have requested that the court modify the charge or not give it at all. Nothing in the record indicates that he did either. Indeed, the defendant did not object to the charge when it was given; he raises this issue for the first time on appeal. In light of the defendant's inaction, the trial court justifiably employed the language of § 54-84 (b). We have held that a failure by the trial court to comply with § 54-84 (b) is plain error; *State* v. *Sinclair,* 197 Conn. 574, 500 A.2d 539 (1985); *State* v. *Carrione,* 188 Conn. 681, 453 A.2d 1137 (1982), cert. denied, 460 U.S. 1084, 103 S. Ct. 1775, 76 L. Ed. 2d 347 (1983); and that deviations from the statutory language that alter the meaning of the charge constitute grounds for reversal. See *State* v. *Tatem,* 194 Conn. 594, 483 A.2d 1087 (1984). Thus it was not error for the trial court to instruct the jury as it did.

At oral argument, the defendant for the first time claimed that § 54-84 (b) is unconstitutional. Because the issue has not been properly briefed, we decline to consider it. *Varley* v. *Varley,* 170 Conn. 455, 457, 365 A.2d 1212 (1976); *Fleischer* v. *Kregelstein,* 150 Conn. 158, 159, 187 A.2d 241 (1962).

There is no error.

In this opinion the other judges concurred.