ROBERT GRIMM *v.* JOHN WAYNE FOX ET AL.
(SC 18814)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan and Vertefeuille, Js.

Argued September 20, 2011—officially released January 10, 2012

*Robert Grimm*, pro se, the appellant (plaintiff).

*Frederick L. Murolo*, with whom was *Karen T. Murolo*, for the appellees (defendants).

*Opinion*

NORCOTT, J. The plaintiff, Robert Grimm, appeals[1] from the trial court's grant of a motion for judgment in favor of the defendants, John Wayne Fox and Curtis, Brinckerhoff and Barrett, P.C., in this legal malpractice action. On appeal, the plaintiff claims that the trial court improperly: (1) granted the defendants' motion for judgment, determining that the critical statements concerning the defendants made by this court in its opinion in *Grimm* v. *Grimm*, 276 Conn. 377, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006), were not sufficient "evidence of an expert nature" (expert evidence) of the defendants' malpractice; and (2) heard the defendants' motion for judgment one day after the motion was filed, and on the same day that trial was scheduled to begin. We disagree with the plaintiff and, accordingly, affirm the judgment of the trial court.

The record, viewed in the light most favorable to the nonmoving plaintiff, reveals the following relevant facts and procedural history. The defendants represented the plaintiff serving as local counsel in an action to dissolve his marriage. In January, 2003, the trial court rendered judgment dissolving the plaintiff's marriage to his former wife and issued various financial orders. *Grimm*

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

v. *Grimm*, supra, 276 Conn. 380–81. The trial court determined, among myriad other issues, that the plaintiff had diminished the marital estate by $2.9 million and also ordered him to pay $100,000 of the attorney's fees incurred by his former wife. Id., 381. The plaintiff raised both of these issues along with four other issues in an appeal from the dissolution judgment to the Appellate Court,[2] which concluded that the trial court had improperly determined that the plaintiff had diminished the marital estate by $2.9 million, but that this incorrect finding was harmless and did not require reversal. *Grimm* v. *Grimm*, 82 Conn. App. 41, 52–53, 844 A.2d 855 (2004). That court also concluded that the trial court had abused its discretion in ordering the plaintiff to pay his wife's attorney's fees. Id., 55.

This court granted the plaintiff's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the trial court's improper findings in support of its financial award were harmless?"[3] *Grimm* v. *Grimm*, 270 Conn. 902, 903, 853 A.2d 519 (2004). We also granted his former wife's con-

[2] In his appeal to the Appellate Court, the plaintiff claimed that: (1) the irretrievable breakdown provision of General Statutes § 46b-40 (c) (1) violates the free exercise of religion clauses of the federal and state constitutions; (2) the trial court improperly concluded that the parties' marriage had irretrievably broken down and precluded expert testimony on the subject; (3) the trial court abused its discretion in making financial orders that lacked evidentiary support; (4) the trial court improperly denied his motion to open the evidence prior to judgment for the purpose of offering certain evidence regarding the valuation of stock options; and (5) the court improperly denied his motion to dismiss or to transfer the matter to another judicial district. See *Grimm* v. *Grimm*, 82 Conn. App. 41, 43, 844 A.2d 855 (2004).

[3] In addition to the question that this court certified, the plaintiff also sought review of three additional questions, namely: (1) whether attorney's fee awards that are improperly rendered as part of a judgment are severable from the overall financial award; (2) whether the Appellate Court properly declined to address his claim of prejudice from the trial court's denial of his pretrial motions; and (3) whether the Appellate Court improperly determined that the no-fault divorce statute did not violate his rights to exercise his religious beliefs.

ditional cross petition limited to the following question: "Did the Appellate Court improperly reverse the trial court's award of counsel fees?" *Grimm* v. *Grimm*, 270 Conn. 903, 853 A.2d 519 (2004). In that certified appeal, we determined that the award of attorney's fees was not an abuse of the trial court's discretion and reversed the judgment of the Appellate Court on that issue. *Grimm* v. *Grimm*, supra, 276 Conn. 399. We affirmed the judgment of the Appellate Court with regard to the financial orders, however, determining that the plaintiff had abandoned his claims with respect to the $2.9 million because: (1) he had failed to move for an articulation or rectification of the trial court's factual findings on this point; and (2) he had failed to raise this issue until oral argument before the Appellate Court and only addressed that issue in the statement of facts section, rather than the argument section of his brief. Id., 386–87, 390–91.

Thereafter, the plaintiff brought this legal malpractice action, relying solely on certain language from this court's opinion deciding his divorce appeal[4] to establish the defendants' breach of the standard of care. The plaintiff did not, however, disclose an expert witness, as is generally required to sustain an action for legal malpractice.[5] The parties filed cross motions for sum-

---

[4] The language on which the plaintiff most heavily relies as evidence of the defendants' breach of the standard of care includes our statement that "two separate, but related, breakdowns of basic appellate procedure require that the trial court's judgment be affirmed because this intensely factual issue is incapable of evaluation by any reviewing court"; *Grimm* v. *Grimm*, supra, 276 Conn. 386; our statement that the Appellate Court brief "violently disregards Practice Book § 67-4, which is the rule governing the organization of appellate briefs"; id., 391 n.14; and the several instances in which we stated that the record was inadequate for review and that the plaintiff's claim on appeal was abandoned due to his failure to adequately brief the issue. See id., 379, 390, 391 n.14, 393.

[5] See, e.g., *Davis* v. *Margolis*, 215 Conn. 408, 416, 576 A.2d 489 (1990) ("[a]s a general rule, for a plaintiff to prevail in a legal malpractice case in Connecticut, he must present expert testimony to establish the standard of proper professional skill or care").

mary judgment and responsive objections by the deadline specified in the court's scheduling order. Although the motions and objections were heard by the trial court, neither of these motions was decided prior to the scheduled start of the trial. The day before the trial was scheduled to begin in this case, the defendants filed four motions in limine, including one to preclude the plaintiff from making any mention, argument or claim at trial that the defendants had breached the standard of care in their representation of the plaintiff, as well as the motion for judgment that is the subject of this appeal. On the day of trial, prior to the start of jury selection, the trial court held a hearing on the motions before it, and granted the defendants' motion in limine precluding the plaintiff from presenting evidence that the defendants had breached the standard of care in their representation of him because the plaintiff had failed to disclose an expert witness. The trial court then granted the defendants' motion for judgment[6] because the plaintiff had not disclosed an expert when one was required and, therefore, could not establish a prima facie case for legal malpractice as to the defendants' breach of the standard of care. This appeal followed.

On appeal, the plaintiff claims that certain statements made by this court in its opinion on his divorce case, in which we indicated our disapproval of the defendants' actions in failing to provide an adequate record for review and in inadequately briefing the plaintiff's claims,[7] are sufficient evidence upon which the jury could reasonably have found that the defendants breached the standard of care owed to the plaintiff.

[6] Although the defendants relied on Practice Book §§ 15-1, 16-9 and 17-1 in support of their "Motion for Judgment," these sections appear inapposite. We therefore understand the defendants' "Motion for Judgment" to be, in essence, a renewed motion for summary judgment, since a stand-alone motion for judgment does not exist under our rules of practice.

[7] For the specific language on which the plaintiff relies, see footnote 4 of this opinion.

The plaintiff argues, therefore, that an expert witness was not required to establish his claim for legal malpractice.[8] The defendants contend, however, that the language of this court's opinion is not sufficient, on its own, to establish that they breached the applicable standard of care.[9] We address the plaintiff's claims in turn.

I

The plaintiff first claims that the trial court improperly granted the defendants' motion for judgment because the language from our opinion in *Grimm* v. *Grimm*, supra, 276 Conn. 377, was sufficient expert

[8] At oral argument before this court, the plaintiff, for the first time, also claimed that if the defendants had not decided to file the petition for certification in the first place, his former wife would not have filed her conditional cross petition, which provided this court the opportunity to reverse the Appellate Court's determination that the trial court's award of attorney's fees was an abuse of discretion. In other words, if the petition for certification had not been filed, the Appellate Court's decision that the trial court had abused its discretion in ordering the plaintiff to pay the attorney's fees incurred by his former wife would have been the last word on the issue, and he would not have been required to pay those fees. Because the claim regarding the propriety of the defendants' conduct in filing the petition for certification in the first place and the consequences of such conduct was raised for the first time during oral argument before this court, and, therefore, has not been properly briefed, we decline to consider it. See, e.g., *State* v. *Wright*, 197 Conn. 588, 595, 500 A.2d 547 (1985).

[9] The defendants also argue, alternatively, that, even if the court's language in the opinion were sufficient to establish a breach of the standard of care, such language, alone, is not sufficient to establish another required element of the cause of action, namely, that such breach actually *caused* the plaintiff harm. The plaintiff, however, argues that expert testimony similarly would have been unnecessary to prove the causation of damages because the Appellate Court's conclusion that the trial court's miscalculation of the amount to which the plaintiff had dissipated the marital assets was harmless was obviously, clearly, and egregiously incorrect such that a jury would not need expert testimony to understand the error. Given that we conclude that the trial court properly rendered judgment in favor of the defendants because the plaintiff was precluded from presenting any evidence regarding the defendants' alleged breach of the standard of care, and thus, could not establish a prima facie case for legal malpractice, we need not reach the alternative causation issue.

evidence to support the plaintiff's action for legal malpractice. We disagree.

To begin, we set forth the applicable standard of review. "The determination of whether expert testimony is needed to support a claim of legal malpractice presents a question of law. . . . Accordingly, our review is plenary." (Internal quotation marks omitted.) *Moore* v. *Crone*, 114 Conn. App. 443, 446, 970 A.2d 757 (2009). Inasmuch as the defendants' motion for judgment is, in essence, a renewed motion for summary judgment; see footnote 6 of this opinion; we note that "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant [the defendants'] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Brooks* v. *Sweeney*, 299 Conn. 196, 210, 9 A.3d 347 (2010).

"In general, the plaintiff in an attorney malpractice action must establish: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." *Mayer* v. *Biafore, Florek & O'Neill*, 245 Conn. 88, 92, 713 A.2d 1267 (1998). "As a general rule, for the plaintiff to prevail in a legal malpractice case in Connecticut, he must present expert testimony to establish the standard of proper professional skill or care. . . . The requirement of expert testimony in malpractice cases serves to assist lay people, such as members of the jury . . . to under-

stand the applicable standard of care and to evaluate the defendant's actions in light of that standard." (Citations omitted.) *Davis* v. *Margolis*, 215 Conn. 408, 416, 576 A.2d 489 (1990).

"There is an exception to this rule, however, where there is such an obvious and gross want of care and skill that neglect is clear even to a lay person." (Internal quotation marks omitted.) *Paul* v. *Gordon*, 58 Conn. App. 724, 727, 754 A.2d 851 (2000). Nevertheless, "[t]he exception to the need for expert testimony is limited to situations in which the defendant attorney essentially has done nothing whatsoever to represent his or her client's interests . . . ." *Pagan* v. *Gonzalez*, 113 Conn. App. 135, 141, 965 A.2d 582 (2009). Finally, "summary judgment [is] proper when [a] plaintiff alleging legal malpractice fails to establish [his] claim by expert testimony." *Moore* v. *Crone*, supra, 114 Conn. App. 446.

Here, it is undisputed that the plaintiff did not retain or disclose an expert witness to testify concerning the standard of care to which the defendants' legal representation should be held. Instead, the plaintiff contends that expert testimony in this case is unnecessary because the language of our opinion in *Grimm* v. *Grimm*, supra, 276 Conn. 377, is sufficient expert evidence regarding the standard of care and the breach of that standard to establish that element of his claim. Relying on *Dubreuil* v. *Witt*, 80 Conn. App. 410, 421–22, 835 A.2d 477 (2003), aff'd, 271 Conn. 782, 860 A.2d 698 (2004), in which the Appellate Court indicated that "there may be no expert who knows more about the practice of law before the Superior Court than a judge of that court," the plaintiff contends that, logically, no expert knows more about the practice of law before the appellate courts than the justices of the Supreme Court. Therefore, he argues that the statements this court made regarding the inadequate record and the inadequate briefing of the divorce appeal clearly indi-

cate an obvious and gross want of care such that a layperson could reasonably and logically conclude that the defendants breached the standard of care. We are not persuaded.

Initially, we note that *Dubreuil* is inapposite to the disposition of the present case. In *Dubreuil*, the Appellate Court observed, and this court agreed, that when a legal malpractice case is tried before a judge, rather than a jury, the trial judge need not require the aid of expert testimony to understand the requisite standard of care or the reasonableness of the attorney's actions in the context of that standard. Id., 422. It is possible to infer from this statement that no expert knows more about appellate practice than this court, but the present case was scheduled to go forward as a jury trial rather than a bench trial. Had this case proceeded to trial, the jury would have required the aid of expert testimony to understand the applicable standard of care and the reasonableness of the defendants' actions in that context. The jury—not this court or even the trial judge— would have been required to assess whether the defendants' actions in the underlying divorce case breached the standard of care such that they would be liable for legal malpractice.[10]

Furthermore, the language we used in our opinion in *Grimm* v. *Grimm*, supra, 276 Conn. 377, expressed our dissatisfaction with the state of the record and the briefing of the issues in that case. This court did not, however, set forth the standard of care that is required

---

[10] The concurrence correctly notes that the jury would be required to accept our observation that the defendants had violated basic rules of appellate procedure as a definitive statement on that issue in evaluating the defendants' performance on behalf of the plaintiff. See footnote 10 of the concurring opinion. As explained hereinafter, however, this does not obviate the need for expert testimony to elucidate whether such violations were, in fact, a breach of the requisite standard of care in the specific circumstances of the plaintiff's divorce appeal. See footnote 13 of this opinion.

of attorneys in similar situations, nor did it address the reasonableness of the defendants' actions within the context of the factual circumstances of that case. The statements, although critical in tone and content, were based upon nothing more than the materials we had before us in the record of that case. We did not, nor could we, on the basis of the record before us, opine as to the reasonableness of the defendants' strategic process or their ultimate decisions throughout the litigation of that case.[11] Although the specific language we used can certainly be characterized as critical of the materials that the defendants submitted to this court, it did not delve into whether the activities in preparing those materials satisfied the requisite standard of care or whether other attorneys would have performed similarly in a comparable situation.[12] Ultimately, our opinion

[11] The concurrence states that it "ha[s] difficulty with [this] assertion . . . because the plaintiff does not claim that the defendants were negligent in their handling of the . . . case generally . . . [but rather] in connection with a particular claim on appeal . . . ." (Internal quotation marks omitted.) Footnote 12 of the concurring opinion. The reasonableness of the defendants' conduct with regard to the one claim before this court cannot be assessed in a vacuum. Rather, whether the defendants breached the requisite standard of care with regard to this one claim must be determined given the entire context of the plaintiff's divorce appeal.

[12] The lack of certainty as to the standard of care is demonstrated by the fact that, at present, the advisory committee on appellate rules has before it a proposed amendment to Practice Book § 61-10, which currently places the burden for providing an adequate record for review wholly on the appellant. See Practice Book § 61-10 ("[i]t is the responsibility of the appellant to provide an adequate record for review"). The amendment proposes "that the existing articulation system should be overhauled because it often results in an unfair and inequitable finding that a party has forfeited a right to obtain appellate review for failure to seek an articulation from the trial court, there is a lack of certainty as to when articulation is needed, and the current system encourages trial judges to withhold the grounds for their decisions unless an articulation is requested." Advisory Committee on Appellate Rules, Meeting Minutes, p. 2 (May 11, 2011), available at http://www.jud.ct.gov/Committees/ap_rules/aprules_min_051111.pdf (last visited December 23, 2011). Indeed, there are multitudinous cases, in virtually all areas of the law, in which both the Appellate Court and this court have determined that the claims would not receive appellate review because the appellant, by failing to move for an articulation, had not presented the court with an

## does not indicate that we had determined that the defen-

adequate record to support the factual underpinnings of the claims. See Connecticut Bar Association's Appellate Advocacy Committee, The Articulation Process in Connecticut Appellate Practice: A Proposal for Change, pp. 6, 21–27 (January 2011) (identifying 152 appellate cases from 2007 to 2010 in which appellate review was forfeited for failure to seek articulation). "The proposed amendment to § 61-10 states that the failure to seek articulation shall not be grounds for the court to decline to review any issue or claim on appeal." Advisory Committee on Appellate Rules, Meeting Minutes, supra, p. 2.

Providing this court with an adequate record for review is a basic rule of appellate procedure in that this court is incapable of meaningful review of a claim without an adequate record. That providing an adequate record for review is a basic rule, however, does not necessarily mean that what is required to provide an adequate record in a specific case is entirely clear at the start of the appeal. The statement by the concurrence that "we made it clear that (1) the plaintiff was required to file a motion for articulation or rectification, (2) the requirement to do so was a basic one, (3) without a motion for articulation or rectification, the plaintiff's claim was unreviewable, and (4) if the plaintiff had filed the motion, [the plaintiff] would have obtained appellate review of his claim," is nothing more than twenty-twenty hindsight. Given that the efficacy of the current articulation system is currently under review and given the frequency with which the appellate courts refuse to engage in review of claims when the appellant has failed to comply with Practice Book § 61-10, our mention of the defendants' failure to do so in this case is hardly consequential to the plaintiff's legal malpractice claim.

Furthermore, our statement that the defendants failed to adequately brief the financial order issue does not account for the off-the-record interactions between the defendants and the plaintiff or the extent to which the plaintiff or his cocounsel directed the content of the brief on appeal. For example, the plaintiff's main goal in bringing the appeal from his divorce decree was to remain married to his wife. It is possible that the appeal regarding the trial court's financial orders was sought merely as a consolation if he could not remain married to his wife. Had that been the motivation—and tellingly, we must surmise as to what the specific goals were on appeal because the record did not include such information—the question becomes whether the emphasis on the claims that would result in the reversal of the divorce decree altogether, with the resulting de-emphasis on the financial arguments, was a professionally sound strategic decision. Simply stating that the one claim certified for appeal before this court, out of the five claims presented on appeal to the Appellate Court, was inadequately briefed does not necessarily indicate a breach of the requisite standard of care. Such a statement does not address whether it was reasonable for the defendants to emphasize certain issues and necessarily de-emphasize other issues, or whether another attorney would have presented the issues differently in similar circumstances. Finally, similar to the treatment of the failure to provide an adequate

dants had definitively breached the requisite standard of care with regard to ensuring an adequate record for review or with regard to adequately briefing the issue on appeal because we did not consider whether their failure to move for an articulation was reasonable within the circumstances of that case and we were not privy to the interactions with the client or the ultimate strategic decisions regarding which issues to emphasize on appeal. As such, a jury would still require the aid of an expert to explain the standard of care regarding the decision to move for an articulation and preparing a brief, and whether by failing to move for an articulation and de-emphasizing the financial claim in the specific circumstances of the divorce appeal, the defendants failed to satisfy that standard of care.[13]

Thus, we find persuasive *Dixon* v. *Bromson & Reiner*, 95 Conn. App. 294, 298–99, 898 A.2d 193 (2006), wherein the Appellate Court noted that "an observation by a trial judge . . . that evidence was not produced to support a contention does not mean that the failure to produce that evidence was the result of professional

record for review, both this court and the Appellate Court frequently refuse to address the merits of claims because they have been inadequately briefed. See, e.g., *Commission on Human Rights & Opportunities ex rel. Arnold* v. *Forvil*, 302 Conn. 263, 279, 25 A.3d 632 (2011); *Bohonnon Law Firm, LLC* v. *Baxter*, 131 Conn. App. 371, 383, 27 A.3d 384 (2011). As such, our mention of the inadequate briefing of one of the five claims in the plaintiff's divorce appeal is not necessarily noteworthy without additional context.

[13] In stating that "our determination that the defendants had violated certain basic rules of appellate procedure and that we would have entertained the plaintiff's claim but for those violations, may be adequate, without more, to support the conclusion that the defendants' representation of the plaintiff with respect to that claim was not acceptable under any fair standard of reasonableness," the concurrence essentially states that a violation of the rules of practice is negligence per se. We decline to go that far. As explained previously, without a review of or an explanation as to *why* counsel acted as they did, and particularly without a statement regarding whether violating rules of practice was reasonable in a specific circumstance, the observation that the defendants had violated even basic rules of practice is not, alone, sufficient to establish a prima facie case for legal malpractice.

negligence by trial counsel." (Internal quotation marks omitted.) Similarly, in the present case, our observation that the defendants had provided this court with an inadequate record and inadequately briefed issues, even though such actions amounted to technical violations of rules of appellate practice, does not, standing alone, indicate that those failures were necessarily the result of professional negligence by the defendants. Accordingly, we conclude that the critical language from *Grimm* v. *Grimm*, supra, 276 Conn. 377, is not sufficient expert evidence of the standard of care that the defendants owed to the plaintiff, nor is it sufficient expert evidence to inform the jury as to whether the defendants breached their duty to the plaintiff.

Moreover, this case is also not one that falls within the exception to the expert testimony requirement set forth in *Paul* v. *Gordon*, supra, 58 Conn. App. 727. The cases that have defined the extent of the exception to the expert testimony requirement have made clear that the exception is limited to "situations in which the . . . attorney essentially has done nothing whatsoever to represent his or her client's interests . . . ." *Pagan* v. *Gonzalez*, supra, 113 Conn. App. 141.[14] Thus, the Appel-

[14] The concurrence takes issue with our reference to *Pagan* because there could be a circumstance in which "an attorney who has represented a client competently over a period of time might thereafter engage in professional misconduct that so clearly falls below the standard of care that a juror readily would recognize the inadequacy of the attorney's performance." In support of its disagreement with the exception to the requirement for expert testimony in legal malpractice cases articulated in *Pagan*, the concurrence cites to a medical malpractice case in which the court indicated that the exception to the requirement for expert testimony was applicable only in situations similar to when a surgeon leaves a foreign object inside a patient following an otherwise successful surgery. See footnote 14 of the concurring opinion; see *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 568, 864 A.2d 1 (2005). Leaving a foreign object inside a surgical patient, however, could only be attributed to a lack of the requisite care by the surgeon. In that case, there is no possibility that the surgeon exercised some level of professionally sound judgment in deciding to leave a foreign object inside a patient, which makes such a case inapposite to legal malpractice cases involving a question as to whether an attorney's violation of a rule of proce-

late Court has upheld grants of summary judgment in favor of attorneys when disgruntled clients have sued for legal malpractice on the basis of an omission by their attorneys, but have failed to retain or disclose an expert witness to testify that such omissions breached the standard of care the attorneys owed to their clients. See *Moore* v. *Crone*, supra, 114 Conn. App. 447–48 (attorney failed to raise certain issues on appeal, failed to notice portion of trial transcript was missing, and *failed to adequately brief issues on appeal*); see also *Byrne* v. *Grasso*, 118 Conn. App. 444, 450, 985 A.2d 1064 (2009) (attorney failed to appear at hearing at which award of fees was made against client and failed to explain right to appeal fees ordered), cert. denied, 294 Conn. 934, 987 A.2d 1028 (2010); *Pagan* v. *Gonzalez*, supra, 138 n.4 (criminal defense attorney failed to object, at sentencing, to representation by prosecutor as to amount of heroin in client's possession at time of his arrest). Although *Moore*, *Byrne* and *Pagan* all involved omissions and failures by the attorneys therein, the Appellate Court consistently has required a more significant failure or omission to warrant the application of the exception to the expert testimony requirement in legal malpractice cases.

Here, the defendants represented the plaintiff in his divorce case throughout a lengthy trial and appeal that

dure was attributable to a legitimate professional decision. There very well may be instances in which an attorney, after a period of competent representation, engages in conduct that clearly falls below the requisite standard of care, and in such a circumstance the jury may not require the aid of expert testimony to understand the applicable standard. Nevertheless, this is not such a case. As discussed previously, it cannot be said that our recognition that the defendants failed to move for an articulation or to adequately brief one of the issues presented on appeal to the Appellate Court indicated that such conduct could have no justifiable, professionally sound explanation. We therefore disagree that "this court's characterization of the defendants' representation of the plaintiff on appeal as violating several basic rules of appellate procedure arguably was sufficient to establish a prima facie case of negligence, even though there is no claim that the defendants did 'nothing whatsoever' to represent the plaintiff's interests . . . ."

took place over the course of several years. This is not a case wherein the attorneys essentially did "nothing whatsoever" in their representation of their client; *Pagan* v. *Gonzalez*, supra, 113 Conn. App. 141; but rather one in which the plaintiff claims that the activities that the defendants undertook on his behalf failed to satisfy the requisite professional standard of care. Although the language we used in our opinion in *Grimm* expressing our dissatisfaction with the record and the briefing before us was critical, such language does not by itself clearly indicate such an obvious and gross want of care and skill so as to render expert testimony unnecessary. Accordingly, in the absence of expert testimony regarding the professional standard of care owed and whether the defendants breached their duty in the circumstances of this case, both of which are required to establish a prima facie case of legal malpractice under *Mayer* v. *Biafore, Florek & O'Neill*, supra, 245 Conn. 88, the defendants were entitled to judgment as a matter of law.

## II

The plaintiff also contends that it was improper for the trial court to grant the defendants' motion for judgment the day after the motion was filed. We disagree.

"The summary judgment procedure is designed to eliminate the delay and expense incident to a trial where there is no real issue to be tried. . . . It is an attempt to dispose of cases involving sham or frivolous issues in a manner which is speedier and less expensive for all concerned than a full-dress trial." (Citations omitted; internal quotation marks omitted.) *Mac's Car City, Inc.* v. *American National Bank*, 205 Conn. 255, 261, 532 A.2d 1302 (1987). Furthermore, "[a] trial court has the authority to manage cases before it as is necessary." *Krevis* v. *Bridgeport*, 262 Conn. 813, 819, 817 A.2d 628 (2002).

This court has determined that "it is within the trial court's discretion to consider a renewed motion for summary judgment that has previously been denied where . . . additional or new evidence has been submitted . . . ." *Mac's Car City, Inc.* v. *American National Bank*, supra, 205 Conn. 262. "We have declared that, although a judge should not lightly depart from a prior ruling on a motion before the same or a different judge, the prior ruling is not binding. 'From the vantage point of an appellate court it would hardly be sensible to reverse a correct ruling by a second judge on the simplistic ground that it departed from the law of the case established by an earlier ruling.' " *Barnes* v. *Schlein*, 192 Conn. 732, 734, 473 A.2d 1221 (1984). "Because this determination is within the trial court's discretion, it may be overturned on appeal only if the court abused that discretion." *Chadha* v. *Charlotte Hungerford Hospital*, 97 Conn. App. 527, 533, 906 A.2d 14 (2006).

Here, because the previous motions for summary judgment had not been acted upon and jury selection was set to begin as soon as the motions in limine and the motion for judgment before the court had been decided, those initial motions for summary judgment had been effectively denied by virtue of the trial court's inaction. In that context, the trial court then granted the defendants' pending motion in limine, which precluded the plaintiff from making any mention, argument or claim at trial that the defendants had breached the standard of care in their representation of him. Although that ruling is not the "new evidence" that is often referred to in cases addressing renewed motions for summary judgment; see, e.g., *Johnson* v. *Atkinson*, 283 Conn. 243, 250, 926 A.2d 656 (2007) (outstanding factual disputes present during first motion for summary judgment were resolved by parties' stipulation of facts prior to renewed motion), overruled in part on

other grounds by *Jaiguay* v. *Vasquez*, 287 Conn. 323, 348, 948 A.2d 955 (2008); it is nonetheless equivalent.

Prior to the start of the trial, the defendants obtained a ruling from the trial court precluding the plaintiff from presenting any evidence, including the language that this court used in *Grimm* v. *Grimm*, supra, 276 Conn. 377, as to the standard of care that the defendants owed to the plaintiff or their alleged breach of the duty owed to him. Without the ability to present any evidence showing that the defendants were negligent in their representation of him, the plaintiff's legal malpractice claim could not go forward. Because the plaintiff could not establish a prima facie case for legal malpractice without evidence of the defendants' alleged negligence, it was well within the trial court's discretion to consider the renewed motion filed the day before jury selection began in order to avoid the delay and expense of a trial in which the plaintiff could not present any evidence to support his claim.

Furthermore, the Appellate Court recently has emphasized the trial court's ample discretion in determining whether to address a motion for summary judgment filed on the eve of trial. In *Kervick* v. *Silver Hill Hospital*, 128 Conn. App. 341, 354, 18 A.3d 622, cert. granted on other grounds, 301 Conn. 922, 22 A.3d 1279 (2011), the Appellate Court affirmed the trial court's determination that a motion for summary judgment was untimely because it had not given the defendants adequate notice regarding the plaintiff's claim. Id., 353. That is not the case here. In their initial motion for summary judgment, the defendants argued that the plaintiff had failed to disclose an expert witness to testify as to the relevant standard of care and the reasonableness of the defendants' actions under that standard of care, and thus could not establish a prima facie case for legal malpractice. The plaintiff had the opportunity, and did in fact offer specific arguments to counter the

defendants' claims in his opposition to their initial motion for summary judgment and during the five hour hearing on the cross motions for summary judgment. Moreover, when the defendants renewed their motion for judgment, they specifically referred back to their initial motion for summary judgment and the accompanying memorandum of law in support of that motion. The trial court also held a hearing on the defendants' renewed motion in which it gave the plaintiff another opportunity to argue against the motion. The renewed motion did not present any new arguments of which the plaintiff did not have notice or an opportunity to refute. It simply renewed the defendants' claim that the plaintiff could not establish a prima facie case of legal malpractice without presenting an expert witness, an issue upon which the trial court had not yet ruled.

Inasmuch as the trial court's grant of the defendants' motion in limine solidified the defendants' position that the plaintiff could not establish a prima facie case of legal malpractice, we conclude that the trial court did not abuse its discretion in hearing and deciding the defendants' motion for judgment.

The judgment is affirmed.

In this opinion ROGERS, C. J., and ZARELLA, McLACHLAN and VERTEFEUILLE, Js., concurred.

PALMER, J., concurring. I agree with the majority that the trial court properly granted the pretrial motion of the defendants, John Wayne Fox and Curtis, Brinckerhoff and Barrett, P.C., for judgment in their favor[1] because the plaintiff, Robert Grimm,[2] failed to disclose an expert witness to support his claim of legal malprac-

---

[1] Like the majority, I treat the defendants' pretrial motion for judgment as a motion for summary judgment. See footnote 6 of the majority opinion.

[2] The plaintiff represented himself in the trial court and also represents himself on appeal.

tice. I therefore also agree with the majority that the judgment of the trial court should be affirmed. In contrast to the majority, however, which concludes that expert testimony was necessary to establish that the defendants' representation of the plaintiff violated the applicable standard of care, I would reject the plaintiff's appeal on the alternative ground that expert testimony was necessary to establish that the defendants' alleged breach of the standard of care was the proximate cause of the damages that the plaintiff allegedly sustained.[3] I would resolve this appeal on that alternative ground because it is beyond dispute that the plaintiff was required to adduce expert testimony on the issue of proximate cause;[4] whether such testimony was necessary to establish a breach of the standard of care is a far closer and, therefore, more difficult question.

The plaintiff's claim stems from the allegedly negligent manner in which the defendants handled certain aspects of his marital dissolution case, in particular, his appeal from the judgment of the trial court to the Appellate Court. See *Grimm* v. *Grimm*, 82 Conn. App. 41, 844 A.2d 855 (2004), rev'd in part, 276 Conn. 377, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006). Although the litigation that spawned the present case is both factually and procedurally tortuous; see *Grimm* v. *Grimm*, supra, 276 Conn. 379, 386 (characterizing parties' litigation as

---

[3] The majority addresses this issue in part I of its opinion. I agree with part II of the majority opinion, in which the majority concludes that the plaintiff cannot prevail on his claim that the trial court improperly granted the defendants' motion for judgment one day after that motion was filed.

[4] Although the plaintiff asserts in conclusory fashion that expert testimony was not necessary to prove causation, he provides no explanation whatsoever to support his contention. As I discuss more fully hereinafter, there is no question that expert testimony is required to establish that the defendants' alleged legal malpractice actually resulted in harm to the plaintiff because no lay juror possibly could be expected to determine whether the plaintiff would have prevailed on his legal claim but for the defendants' alleged negligence in prosecuting the claim.

"procedurally dysfunctional" and "involving an unnecessarily complicated and voluminous record"); the factual and procedural background relevant to the plaintiff's claim is relatively straightforward. Beginning in 1998, the defendants served as local counsel to the plaintiff in the trial court proceedings that, in January, 2003, culminated in a judgment dissolving the plaintiff's marriage to his former wife. As part of that judgment, the trial court made a number of findings and issued various financial orders. Among the court's factual findings was its determination that the plaintiff wrongfully had reduced the value of the marital estate by $2.9 million.[5] See *Grimm* v. *Grimm*, supra, 82 Conn. App. 51. The trial court also ordered the plaintiff to pay $100,000 of the attorney's fees that his former wife had incurred. Id., 53–54.

Following the dissolution judgment, the plaintiff retained the defendants to represent him in his appeal to the Appellate Court. In that appeal, the plaintiff claimed, inter alia, that the trial court's finding that he had unjustly diminished the marital estate by $2.9 million was clearly erroneous. See id., 51. The Appellate Court agreed with the plaintiff but concluded that the erroneous finding was harmless.[6] Id., 52–53. The Appellate Court also concluded that the trial court had abused its discretion in ordering the plaintiff to pay $100,000 of his former wife's attorney's fees. Id., 55.

[5] The plaintiff contends that, because of the nature and magnitude of this finding, it necessarily had a bearing on all of the court's financial orders.

[6] Judge Flynn dissented from this portion of the Appellate Court opinion. See *Grimm* v. *Grimm*, supra, 82 Conn. App. 56–58 (*Flynn, J.*, dissenting). Although Judge Flynn agreed with the Appellate Court majority that the trial court improperly found that the plaintiff wrongfully had diminished the marital estate by $2.9 million, he disagreed that the finding was harmless. Id., 56–57. Accordingly, Judge Flynn would have reversed the portion of the trial court's judgment pertaining to the financial orders and remanded the case for a new hearing on the financial issues. Id., 58.

Thereafter, we granted the plaintiff's petition for certification to appeal, limited to the issue of whether the Appellate Court properly had concluded that the trial court's improper finding with respect to the $2.9 million reduction of the marital estate was harmless. *Grimm v. Grimm*, 270 Conn. 902, 903, 853 A.2d 519 (2004). We also granted his former wife's conditional cross petition for certification to appeal, limited to the issue of whether the Appellate Court properly had reversed the award of attorney's fees. *Grimm v. Grimm*, 270 Conn. 903, 853 A.2d 519 (2004). With respect to the plaintiff's appeal, we concluded that the plaintiff had abandoned his claim concerning the $2.9 million reduction in the marital estate because (1) he did not file a motion for an articulation or rectification of the trial court's factual findings on that issue, and (2) the claim was not raised until oral argument before the Appellate Court, in part because the briefing of that claim was both inadequate and set forth in the wrong section of his Appellate Court brief. *Grimm* v. *Grimm*, supra, 276 Conn. 386–87, 390–91 and n.14. The defendants continued to represent the plaintiff throughout the pendency of his appeal to this court.

The plaintiff subsequently commenced the present legal malpractice action. Although not artfully drawn, the plaintiff's pro se complaint alleges, in essence, that the defendants were negligent in their representation of the plaintiff in the Appellate Court because their efforts to challenge the propriety of the trial court's finding that the plaintiff wrongfully had diminished the marital estate by $2.9 million fell below the applicable standard of care.[7] In support of his claim of negligence, the plaintiff relies exclusively on certain statements in

---

[7] As this court recently has reiterated, "we should be solicitous to pro se [parties] and construe their pleadings liberally in light of the limited legal knowledge [that] they possess." (Internal quotation marks omitted.) *Markley* v. *Dept. of Public Utility Control*, 301 Conn. 56, 74, 23 A.3d 668 (2011).

this court's opinion in *Grimm* v. *Grimm,* supra, 276 Conn. 377, in which we declined to review the plaintiff's contention that the Appellate Court improperly had concluded that the trial court's improper finding concerning the $2.9 million diminution of the marital estate was harmless.

Specifically, the plaintiff notes that, in *Grimm* v. *Grimm,* supra, 276 Conn. 377, we determined that he was not entitled to review of his claim concerning the $2.9 million because of what we characterized as "two separate, but related, breakdowns of basic appellate procedure" that had rendered the claim "incapable of meaningful evaluation by any reviewing court." Id., 386. We observed that the "first procedural shortfall" was the plaintiff's "failure to move for articulation or rectification of the underpinnings of the trial court's factual findings in a case involving an unnecessarily complicated and voluminous record." Id. With respect to this procedural default, we explained that the plaintiff bore the burden of seeking such an articulation or rectification because "without [an] . . . articulation or rectification, there [was] no way short of a crystal ball for a reviewing court to ascertain the precise basis for the trial court's decision in this voluminous record." Id., 389. We further stated that "[a]n articulation or rectification by the trial court would have, at the very least, aided the reviewing courts in determining the basis or lack thereof in the record for the trial court's decision . . . and also would have afforded the trial court, as the finder of fact, the opportunity to correct any miscalculations." Id. Thus, we made it clear that (1) the plaintiff was required to file a motion for articulation or rectification, (2) the requirement to do so was a basic one, (3) without a motion for articulation or rectification, the plaintiff's claim was unreviewable, and (4) if the plaintiff had filed the motion, he would have obtained appellate review of his claim.

We then explained that, even if the plaintiff had provided the court with an adequate record, his claim concerning the $2.9 million diminution of the marital estate was unreviewable because he had abandoned the claim. We reached this conclusion for two reasons, the first of which was that he had not adequately raised the claim in the Appellate Court. In fact, we observed that "[t]he only mention of the $2.9 million in the [plaintiff's] Appellate Court brief is contained not in the *argument* section . . . but . . . in the *nature of proceedings and statement of facts*." (Emphasis in original.) Id., 390–91. We then observed that the limited discussion of the issue in the statement of facts was inadequate; see id., 390–93 and n.14; and, in addition, that "it violently disregard[ed] . . . the rule [of practice] governing the organization of appellate briefs." Id., 391 n.14. Finally, we explained that the plaintiff had abandoned his claim for a second reason, namely, because such a claim was not raised until oral argument before the Appellate Court. Id., 393. We further explained that it is well established that a reviewing court will not consider a claim first made at oral argument, and, therefore, the Appellate Court should not have considered the plaintiff's claim. Id.

Thus, as we stated in summarizing our reasons for declining to address the merits of the plaintiff's claim on appeal to this court, "the [plaintiff's claim] with respect to the $2.9 million [was] both abandoned and rendered unreviewable by his failure to follow certain basic principles of appellate procedure." Id., 382. Moreover, our detailed explanation as to why the plaintiff was not entitled to this court's review of his claim makes it clear that he would have received such review if the defendants had performed in the manner expected—indeed, required—of attorneys appearing before the Appellate Court and this court. See generally id., 386–94.

Under the circumstances, expert testimony may not have been required to make out a prima facie case that the defendants' representation of the plaintiff on appeal fell below the applicable standard of care.[8] "Malpractice is commonly defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services . . . ."[9] (Internal quotation marks omitted.) *Updike, Kelly & Spellacy, P.C.* v. *Beckett,* 269 Conn. 613, 649, 850 A.2d 145 (2004). Thus, "[t]he general rule is that [when an attorney's] exercise of proper professional skill and care is in issue, expert testimony tending to establish the want of such skill and care is essential to recovery. . . . The rationale underlying that rule is that in most cases, the determination of an attorney's standard of care, which depends on the particular circumstances of the attorney's representation, is beyond the experience of the average layperson, including members of the jury and perhaps even the presiding judge."

---

[8] I note, preliminarily, that the present action is not predicated on the contention that the defendants negligently failed to assert a claim—in this case, a claim challenging the trial court's finding with respect to the $2.9 million diminution of the marital estate—that they should have asserted. Rather, the present action involves a scenario in which the claim was raised but not competently pursued. In view of the fact that the defendants raised the claim—presumably because they had decided, in the exercise of their professional judgment, that it was appropriate to do so—the issue presented by this appeal is not whether the claim should have been raised but whether the defendants, having done so, were negligent in failing to pursue it competently. Put differently, by raising the claim, the defendants relieved the plaintiff of the burden of demonstrating that the claim should have been raised; his burden, instead, is to establish that the defendants prosecuted the claim negligently and that he suffered harm by virtue of that negligence.

[9] In general, therefore, "the plaintiff in [a legal] malpractice action must establish: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." (Internal quotation marks omitted.) *Updike, Kelly & Spellacy, P.C.* v. *Beckett,* 269 Conn. 613, 649, 850 A.2d 145 (2004).

(Citation omitted; internal quotation marks omitted.) *Celentano* v. *Grudberg*, 76 Conn. App. 119, 126, 818 A.2d 841, cert. denied, 264 Conn. 904, 823 A.2d 1220 (2003). Although expert evidence is required in most cases, it is not always necessary. E.g., *St. Onge, Stewart, Johnson & Reens, LLC* v. *Media Group, Inc.*, 84 Conn. App. 88, 95, 851 A.2d 1242, cert. denied, 271 Conn. 918, 859 A.2d 570 (2004). In particular, the general rule requiring expert testimony does not apply to cases in which "there is present such an obvious and gross want of care and skill that the neglect is clear even to a layperson." (Internal quotation marks omitted.) *Davis* v. *Margolis*, 215 Conn. 408, 416 n.6, 576 A.2d 489 (1990). In such cases, the evidence is deemed "sufficiently transparent to obviate the need for the testimony of experts." *St. Onge, Stewart, Johnson & Reens, LLC* v. *Media Group, Inc.*, supra, 96; see also id., 95–96 (explaining that this "flexible approach to jury competence to make reasoned decisions about legal performance has worked well in legal malpractice cases"). This court's discussion in *Grimm* v. *Grimm*, supra, 276 Conn. 382, 386, in which we explained that the defendants' violation of several "basic" rules of appellate procedure had resulted in our refusal to entertain the plaintiff's claim concerning the $2.9 million diminution of the marital estate may well be sufficient to obviate the need for expert testimony on the issue of negligence.[10] Of course, in that case, we had no occasion to speak in terms of the standard of care because that specific issue was not before the court. Nevertheless, our determination that the defendants had violated certain basic rules of appellate procedure and that we would have entertained the plaintiff's claim but for

---

[10] Because this court is the ultimate arbiter of such matters, our conclusion in *Grimm* v. *Grimm*, supra, 276 Conn. 382, 386, that basic rules of appellate procedure were violated represents a definitive statement on that issue, and a juror evaluating the defendants' performance on behalf of the plaintiff would be required to accept this court's observation in that regard.

those violations, may be adequate, without more, to support the conclusion that the defendants' representation of the plaintiff with respect to that claim was not acceptable under any fair standard of reasonableness. Indeed, it is difficult to see how a juror with knowledge of our analysis and conclusion in *Grimm* v. *Grimm*, supra, 276 Conn. 377, could reach any other result, at least without countervailing evidence from the defendants, because an attorney's failure to follow basic rules of appellate procedure relative to a claim that the attorney believed to be meritorious also constitutes a failure to meet minimal standards of appellate advocacy. This is especially true with respect to the defendants' failure to assert their claim in the proper section of the Appellate Court brief.

The majority asserts, however, that, although in *Grimm* v. *Grimm*, supra, 276 Conn. 377, we "expressed our dissatisfaction with the state of the record and the briefing of the issues" in language that was "critical in tone and content . . . [w]e did not, nor could we, on the basis of the record before us, opine as to the reasonableness of the defendants' strategic process or their ultimate decisions throughout the litigation of that case." The majority further states that "our observation that the defendants had provided [the Appellate Court and] this court with an inadequate record and inadequately briefed issues . . . does not, standing alone, indicate that those failures were necessarily the result of professional negligence by the defendants." These assertions ignore the fact that we *also* stated in *Grimm* v. *Grimm*, supra, 276 Conn. 382, 386, that the defendants had violated several basic rules of appellate procedure. That observation is critical. Although attorney negligence might not be the only possible explanation for an inadequacy in the record or briefing in other cases, in *Grimm* v. *Grimm*, supra, 276 Conn. 377, this court expressly attributed those failings to the fact that

the defendants had violated certain rudimentary procedural rules.[11] The majority does not persuasively explain how the defendants' failure to follow basic rules of appellate procedure reasonably could be attributed to their "strategic process or their ultimate decisions throughout the litigation of [the] case."[12]

For this reason, the majority's reliance on *Dixon* v. *Bromson & Reiner*, 95 Conn. App. 294, 298–99, 898 A.2d 193 (2006), a legal malpractice case, is misplaced. The majority finds support in *Dixon* for the proposition that "an observation by [the court] . . . that evidence was not produced to support a contention does not mean

[11] Thus, the majority is incorrect in asserting that I am "essentially stat[ing] that a violation of the rules of practice is negligence per se." Footnote 13 of the majority opinion. As I have explained, the issue that the majority addresses is whether expert testimony is necessary to prove the defendants' negligence under the unusual facts of the present case, facts that include this court's extended discussion and evaluation, in *Grimm* v. *Grimm*, supra, 276 Conn. 377, of the defendants' performance in representing the plaintiff in his appeal to the Appellate Court. In fact, because I would not reach the issue, I need not decide whether the majority is correct in concluding that the plaintiff was required to present expert testimony for the purpose of establishing negligence. I do believe, however, that the question is close enough that this court would be well advised to avoid it and to decide the case on the alternative ground for affirming the trial court's judgment.

[12] I also have difficulty with the majority's assertion insofar as it pertains to the defendants' decisions "throughout the litigation of [the] case" because the plaintiff does not claim that the defendants were negligent in their handling of the plaintiff's case generally. Rather, the plaintiff's legal malpractice action is predicated solely on the defendants' representation of the plaintiff in connection with a particular claim on appeal that, the plaintiff contends, would have resulted in a favorable outcome, saving him hundreds of thousands of dollars, if the defendants had followed the various rules of appellate procedure that we identified in *Grimm* v. *Grimm*, supra, 276 Conn. 377. The plaintiff, however, was required to adduce expert testimony to support his contention that he would have prevailed on that appellate claim, and his failure to do so clearly entitles the defendants to judgment in their favor. That is because, without such expert testimony, the plaintiff cannot establish that the defendants' negligence was a proximate cause of his alleged damages, and not because he necessarily has failed to demonstrate that the defendants were negligent in the manner in which they litigated the claim on appeal.

that the failure to produce that evidence was the result of professional negligence by . . . counsel." (Internal quotation marks omitted.) In *Dixon*, however, there was nothing to suggest that counsel's failure to provide a record adequate to support a particular contention was the product of counsel's negligence. By contrast, in *Grimm* v. *Grimm*, supra, 276 Conn. 377, this court declined to review the plaintiff's claim because the defendants had failed to follow certain basic rules of appellate procedure. The other cases cited by the majority for the same principle are similarly inapposite because they, like *Dixon*, also do not involve a situation in which this court—or, for that matter, any other court—indicated that counsel's failure or omission was the result of a violation of the rules of procedure or some other neglect. See, e.g., *Byrne* v. *Grasso*, 118 Conn. App. 444, 449–50, 985 A.2d 1064 (2009) (client alleging legal malpractice by former attorney could not establish attorney's negligence without expert testimony when record did not establish that counsel's failure to take certain action was due to neglect or other impropriety), cert. denied, 294 Conn. 934, 987 A.2d 1028 (2010); *Moore* v. *Crone*, 114 Conn. App. 443, 447–48, 970 A.2d 757 (2009) (same); *Pagan* v. *Gonzalez*, 113 Conn. App. 135, 138 n.4, 140–41, 965 A.2d 582 (2009) (same).[13]

---

[13] I note that the majority states that, "[a]lthough [the foregoing cases, namely] *Moore*, *Byrne* and *Pagan* all involved omissions and failures by the attorneys therein, the Appellate Court consistently has required a more significant failure or omission to warrant the application of the exception to the expert testimony requirement in legal malpractice cases." In fact, the requirement of expert testimony is not strictly reserved for cases involving "a more significant failure or omission" than the failures or omissions that occurred in *Moore*, *Byrne* and *Pagan* because, in each of those cases, the reason for the failure or omission never was addressed. If the Appellate Court had concluded in those cases, as this court did in *Grimm* v. *Grimm*, supra, 276 Conn. 377, that the failures or omissions had been due to violations of basic rules of appellate procedure, then expert testimony might not have been necessary to establish negligence.

I also disagree with the majority's statement, quoted verbatim from the opinion of the Appellate Court in *Pagan* v. *Gonzalez*, supra, 113 Conn. App. 141, that "the exception to the expert testimony requirement [in a legal malpractice case] . . . is limited to situations in which the . . . attorney essentially has done nothing whatsoever to represent his or her client's interests . . . ." (Internal quotation marks omitted.) Like the court in *Pagan*, the majority fails to explain the logic of this assertion, and I am unable to discern any such logic. In fact, it is perfectly possible that an attorney who has represented a client competently over a period of time might thereafter engage in professional misconduct that so clearly falls below the standard of care that a juror readily would recognize the inadequacy of the attorney's performance. Although, in such circumstances, it cannot be said that the attorney *essentially did nothing whatsoever* on behalf of the client, no expert testimony would be necessary to establish the attorney's negligence.[14] In the present case, this court's characterization of the defendants' representation of the plaintiff on appeal as violating several basic rules of appellate procedure arguably was sufficient to establish a prima facie case of negligence, even though there is no claim that the defendants did "nothing whatso-

[14] I note that the same exception to the general rule requiring expert testimony applies in cases involving claims of medical malpractice. See, e.g., *Kalams* v. *Giacchetto*, 268 Conn. 244, 248 n.4, 842 A.2d 1100 (2004) ("[e]xpert [medical] opinion [evidence] may . . . be excused in those cases [in which] the professional negligence is so gross as to be clear even to a lay person" [internal quotation marks omitted]). In those cases, as well, there is no reason for requiring expert medical testimony unless the defendant physician "essentially has done nothing whatsoever" on behalf of his or her patient. Thus, for example, a surgeon who successfully performs surgery on a patient also may leave a foreign object inside the patient's body. In those cases, although the vast majority of the surgeon's work was competent, expert testimony may not be needed to establish the surgeon's negligence in failing to remove the foreign object. See, e.g., *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 567–68, 864 A.2d 1 (2005) (discussing exceptions to requirement of expert testimony in medical malpractice cases).

ever" to represent the plaintiff's interests or that their performance otherwise was deficient "throughout" the lengthy trial and appeal of the case.

For the foregoing reasons, I would not reach the issue of whether the defendants were negligent in their representation of the plaintiff on appeal. Rather, I would decide this case on the basis of the defendants' alternative ground for affirmance, namely, that the plaintiff was required to present expert testimony to establish that the defendants' negligence was the proximate cause of the damages that he has alleged. As this court previously has observed, "[i]n legal malpractice actions, the plaintiff typically proves that the defendant attorney's professional negligence caused injury . . . by presenting evidence of what would have happened in the underlying action had the defendant not been negligent. This traditional method of presenting the merits of the underlying action is often called the case-within-a-case. 5 R. Mallen & J. Smith, Legal Malpractice (5th Ed. 2000) § 33.8, pp. 69–70." (Internal quotation marks omitted.) *Margolin* v. *Kleban & Samor, P.C.*, 275 Conn. 765, 775 n.9, 882 A.2d 653 (2005). Thus, to prevail on his claim against the defendants, the plaintiff would be required to prove not only that the defendants were negligent in their handling of his appeal, but also that that appeal would have been successful if the defendants had represented him competently. In the absence of such proof, the plaintiff could not establish that his alleged damages—all of which stemmed from the trial court's financial orders—were the result of the defendants' negligence and not from the trial court's reasonable exercise of discretion in entering those orders. Even if we assume that the defendants were negligent in their representation of the plaintiff, it is clear that expert testimony was necessary for a proper resolution of the proximate cause issue because a jury could not possibly be expected to reach a reasoned conclusion

about the merits of the plaintiff's appeal without the aid of such testimony. Indeed, as I previously noted, the plaintiff makes no argument as to why expert testimony on causation would not have been necessary, presumably because there simply is no such argument to be made. Accordingly, I would affirm the judgment of the trial court but on this alternative ground. I therefore concur in the result that the majority reaches.