## BEVERLY L. GRIMM *v.* ROBERT L. GRIMM
### (AC 23901)

Lavery, C. J., and Schaller and Flynn, Js.

---

Argued November 20, 2003—officially released March 16, 2004

*Thomas P. Puccio*, pro hac vice, with whom were *John Wayne Fox* and, on the brief, *Patricia M. Gaug*, for the appellant (defendant).

*Gaetano Ferro*, with whom, on the brief, was *Norman A. Roberts II*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. "The tortured history of this case demonstrates the detrimental effect that procedural dysfunction in a marital dissolution action can have on the judicial process." *Grimm* v. *Grimm*, 74 Conn. App. 406, 407, 812 A.2d 152, (2002), cert. denied, 263 Conn. 911, 821 A.2d 766 (2003). In this appeal, the defendant, Robert L. Grimm, claims that (1) General Statutes § 46b-40 (c) (1)[1] violates the free exercise of religion clauses of the federal and state constitutions,[2] (2) the trial court improperly concluded that the parties' marriage had irretrievably broken down and precluded expert testimony on the subject, (3) the court improperly determined the financial orders, (4) the court improperly denied his motion to open the evidence prior to judgment for the purpose of offering certain evidence and (5) the court improperly denied his motion to dismiss or to transfer the matter to another judicial district.[3] We reverse the judgment as to the award of counsel fees only and affirm the judgment in all other respects.

The parties first separated in 1988, and the plaintiff, Beverly L. Grimm, commenced divorce proceedings in

[1] General Statutes § 46b-40 (c) provides in relevant part: "A decree of dissolution of a marriage or a decree of legal separation shall be granted upon a finding that one of the following causes has occurred: (1) The marriage has broken down irretrievably . . . ."

[2] The first amendment to the United States constitution provides in relevant part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."

The constitution of Connecticut, article first, § 3, provides: "The exercise and enjoyment of religious profession and worship, without discrimination, shall forever be free to all persons in the state; provided, that the right hereby declared and established, shall not be so construed as to excuse acts of licentiousness, or to justify practices inconsistent with the peace and safety of the state."

[3] We need not address the defendant's fifth claim that the court improperly denied the defendant's motion to dismiss or transfer because it is barred by the doctrine of res judicata. See *Rathblott* v. *Rathblott*, 79 Conn. App. 812, 821, 832 A.2d 90 (2003). That issue became moot after the defendant's first appeal in *Grimm* v. *Grimm*, supra, 74 Conn. App. 406.

Ohio. The plaintiff subsequently withdrew the action after the defendant's repeated attempts to prolong the litigation by failing to appear or to plead except to contest the plaintiff's claim of irreconcilable differences. The plaintiff subsequently brought an action for dissolution of the marriage on the ground that she had lived separately and apart from the defendant for more than one year. She withdrew that action after the parties briefly resumed cohabitation. In 1992, the plaintiff brought another divorce proceeding. She withdrew that action after the defendant obtained employment in Connecticut where she was residing. In 1997, the plaintiff brought a divorce proceeding in the judicial district of Stamford-Norwalk, which she subsequently withdrew when she commenced the present action in Danbury seeking dissolution of her marriage on the ground of irretrievable breakdown. The defendant filed a motion to dismiss the action, or, in the alternative, to transfer the action to the judicial district of Stamford-Norwalk, arguing that the filing of the present action constituted forum shopping because the plaintiff had originally commenced a dissolution action in Stamford and later withdrew the action. The court denied the defendant's motion.

Documentary and testimonial evidence were presented to the court on approximately sixteen trial dates from May 22 to July 9, 2002. In January, 2003, the court dissolved the parties' marriage and entered various financial orders. The court ordered that the defendant (1) convey his interest in the parties' marital residence located in New Canaan to the plaintiff, (2) pay the plaintiff lump sum alimony in the amount of $100,000, and (3) pay the plaintiff $100,000 in attorney's fees. The defendant appeals from the judgment rendered.

I

The defendant first claims that § 46b-40 (c) (1) violates the free exercise of religion clauses of the federal

and state constitutions. The defendant argues that, as applied to him, § 46b-40 (c) (1) violates his religious beliefs and liberties because his faith opposes divorce.[4] We disagree.

The first amendment to the United States constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." The fundamental concept of liberty embraced in the first amendment applies to the states through the fourteenth amendment. *Cantwell* v. *Connecticut*, 310 U.S. 296, 303, 60 S. Ct. 900, 84 L. Ed. 1213 (1940). The United States Supreme Court has "consistently held that the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." (Internal quotation marks omitted.) *Employment Division, Dept. of Human Resources of Oregon* v. *Smith*, 494 U.S. 872, 879, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990). General Statutes § 46b-40 (c) (1) is a valid and neutral law of general applicability. The statute does not in any manner infringe on the defendant's right to exercise his religious beliefs merely because it permits the plaintiff to obtain a divorce from him against his wishes.

Our Supreme Court has held that § 46b-40 (c) (1) is constitutional. "The legislature could rationally conclude that public policy requires an accommodation to the unfortunate reality that a marital relationship may terminate in fact without regard to the fault of either marital partner, and that such a relationship should therefore be dissoluble in law upon a judicial determination of irretrievable breakdown. Courts in other juris-

---

[4] The defendant took the alternative position at trial that the marriage was void and had never occurred because one or both of the plaintiff's prior marriages may not have been legally dissolved prior to his marriage to her. The court found that argument baseless.

dictions with similar statutes have unanimously upheld the constitutionality of no-fault divorce." *Joy* v. *Joy*, 178 Conn. 254, 256, 423 A.2d 895 (1979). Accordingly, we conclude that § 46b-40 (c) (1) does not violate the defendant's right to exercise his religious beliefs.

## II

The defendant next claims that the court abused its discretion in finding that the marriage had irretrievably broken down and by precluding expert testimony on the subject. We are not persuaded.

## A

The defendant argues that the court abused its discretion in finding that the marriage had broken down irretrievably.

The following additional facts are necessary to review the defendant's claim. At trial, the plaintiff testified that the marriage had irretrievably broken down. She testified that the defendant was very cold, distant, abusive, cruel, dishonest and controlling. She further testified that the defendant exposed himself in the presence of a child, committed larceny and made inappropriate and unwanted sexual advances. The defendant countered that he was willing to seek marriage counseling and that the plaintiff's pattern of behavior of commencing and withdrawing divorce proceedings demonstrated that she was mistaken in her belief that the marriage had broken down irretrievably. The plaintiff contended that her pattern of behavior was the result of the defendant's campaign to thwart her efforts to dissolve the marriage by prolonging the litigation. She cited the numerous continuances, stays, depositions, motions and other tactics that the defendant had utilized to delay the divorce proceedings. She also testified that the defendant had warned her that if she attempted to end the marriage, he would "drag out" the litigation

and cause her to spend "$100,000" in counsel fees unless she agreed to give him 80 percent of the marital assets. Notably, the defendant has spent more than $1 million in counsel fees in relation to the divorce proceedings.

"The determination of whether a breakdown of a marriage is irretrievable is a question of fact to be determined by the trial court." *Eversman* v. *Eversman*, 4 Conn. App. 611, 614, 496 A.2d 210, cert. denied, 197 Conn. 806, 499 A.2d 57 (1985). "We decline, as have other courts that have considered the issue . . . to circumscribe this delicate process of fact-finding by imposing the constraint of guidelines on an inquiry that is necessarily individualized and particularized." (Citations omitted.) *Joy* v. *Joy*, supra, 178 Conn. 255. "The fact that the defendant maintains hope for reconciliation will not support a finding that there are prospects for a reconciliation. . . . A difference, to be irreconcilable, need not necessarily be so viewed by both parties. . . . [S]ee *In re Marriage of Baier*, 39 Colo. App. 34, 561 P.2d 20 (1977) (evidence supported finding of irretrievable breakdown even though husband claimed strong attachment to wife and that difficulties could be resolved by counseling)." (Citations omitted.) *Eversman* v. *Eversman*, supra, 614.

"Factual findings, such as those determinations, are reviewed under the clearly erroneous standard of review. A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Citation omitted; internal quotation marks omitted.) *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, 79 Conn. App. 22, 31–32, 830 A.2d 240 (2003).

48

"[T]he unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . [W]e do not review the evidence to determine whether a conclusion different from the one reached could have been reached. . . . Further, we must accept the factual findings of the court unless they are clearly erroneous in light of the evidence presented in the record as a whole." (Citation omitted; internal quotation marks omitted.) *Syragakis* v. *Syragakis*, 79 Conn. App. 170, 173, 829 A.2d 885 (2003). "Where, however, some of the facts found [by the trial court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's fact finding process, a new hearing is required." (Internal quotation marks omitted.) *Owens* v. *New Britain General Hospital*, 32 Conn. App. 56, 78, 627 A.2d 1373 (1993), aff'd, 229 Conn. 592, 643 A.2d 233 (1994).

The defendant failed to demonstrate that the court improperly found that the marriage had broken down irretrievably. The record clearly demonstrates the breakdown in the parties' marriage. The fact that the defendant claims to maintain hope for reconciliation will not support a finding that there are prospects for reconciliation. The allegations raised by the plaintiff concerning the difficulties in the marriage were serious and spanned almost the entire length of the marriage. The court was within its discretion to credit the plaintiff's version of the facts that the pattern of litigation was the result of the defendant's attempt to thwart the dissolution proceedings, not the plaintiff's lack of intent to end the marriage. Accordingly, we conclude that the court did not improperly find that the marriage had broken down irretrievably.

## B

The defendant claims that he was precluded from presenting expert testimony from a third party witness that the marriage had not irretrievably broken down. The court reasoned that whether the marriage had broken down irretrievably was "an ultimate issue to be decided by the trier of fact" and that the court "does not need expert assistance in deciding that issue."

Section 7-3 (a) of the Connecticut Code of Evidence provides in relevant part: "Testimony in the form of an opinion is inadmissible if it embraces an ultimate issue to be decided by the trier of fact, except that . . . (b), an expert witness may give an opinion that embraces an ultimate issue where the trier of fact needs expert assistance in deciding the issue." We conclude that expert testimony was not necessary to determine whether the marriage had irretrievably broken down because such a matter could be considered within the knowledge and experience of the trier of fact.

## III

The defendant next claims that the court improperly denied his motion to open the evidence to allow what he called newly discovered evidence of the valuation of the plaintiff's stock options. We disagree.

At trial, the court sustained the plaintiff's objection to the defendant's offering of expert testimony on the valuation of General Electric Corporation (General Electric) stock options on the basis of data from the company's annual report. The court ruled that no expert witness had been disclosed. After the trial concluded, but before the court rendered judgment, the defendant filed a motion to open the evidentiary hearing because General Electric had made a public statement after the evidentiary hearing, adopting a valuation method for its stock options. The court denied the defendant's motion.

"Whether or not a trial court will permit further evidence to be offered after the close of testimony in the case is a matter resting within its decision. . . . In the ordinary situation where a trial court feels that, by inadvertence or mistake, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided." (Internal quotation marks omitted.) *Pagliaro* v. *Jones*, 75 Conn. App. 625, 638–39, 817 A.2d 756 (2003).

The defendant did not meet that standard. The defendant merely stated in a conclusory fashion that General Electric had made a public statement adopting a new valuation method for its stock options. The defendant did not demonstrate how that new evidence could be distinguished from his earlier unsuccessful attempts to offer expert testimony from a General Electric employee on the same subject matter. That evidence was properly excluded because the defendant did not disclose an expert witness on the subject matter. Further, the evidence was not material and likely would not have produced a different result. General Electric's purportedly new valuation method would be just one of numerous methods that could be utilized in valuing the plaintiff's stock options. See, e.g., *Wendt* v. *Wendt*, 59 Conn. App. 656, 663 n.4, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000). Accordingly, we find no abuse of discretion by the court in refusing to open the evidence.

IV

The defendant next claims that the court improperly determined the amount by which he had reduced the marital assets and abused its discretion in ordering him to pay the plaintiff's counsel fees. We conclude that the

court's finding as to the amount the defendant reduced the marital assets was incorrect but that the incorrect findings constituted harmless error. We also conclude that the court improperly awarded counsel fees to the plaintiff.

A

The defendant claims that the court improperly determined the amount by which he had reduced or dissipated the marital assets. The applicable standard of review has been set forth in part II.

The court stated in its decision that its financial orders were based on numerous factors. In its memorandum of decision, the court referred to the parties' age, health, employment, education, earnings and earning capacities, as well as the behavior of the defendant. See General Statutes §§ 46b-81 (c) and 46b-82. Further, the court pointed out the defendant's failure to make any meaningful effort to obtain employment subsequent to 1998. The court found that his behavior was the principal cause of the breakdown of the marriage and that he inappropriately had diminished the value of the marital assets. The memorandum of decision indicated that the court properly considered and weighed the statutory factors in making its financial award.

The defendant argues that the court erroneously adopted the plaintiff's trial brief in finding that the defendant wrongfully had diminished the marital assets by approximately $2.9 million. The court found that the defendant had diminished the marital assets by his liquidation of retirement funds in the amount of $1,121,737, his expenditure of $717,865 in charitable contributions and his expenditure of more than $1,130,000 in counsel fees.

The defendant contends that his charitable contributions did not wrongfully diminish the marital assets

because the court improperly held that the contributions violated the automatic orders that are entered at the inception of a marital dissolution action. The court's memorandum of decision stated: "Likewise, the extent of the charitable gifts paid out by the defendant at a time when there are automatic orders prohibiting wholesale reductions in the marital assets is inexcusable." The automatic orders came into effect on December 15, 2000. The charitable contributions during the years 2001 and 2002 in the amount of $286,000 violated the orders because the automatic orders were in effect. That general statement by the court simply highlighted that the contributions were especially egregious because the automatic orders were clearly in effect at that time; the court's statement did not necessarily stand for the proposition that all donations were in violation of the automatic orders. We note, however, that the defendant's charitable donations that were made in 1998 in the amount of $149,525 were specifically authorized by an earlier order from the Stamford case when the automatic orders in this case were not in effect. The earlier order permitted the defendant to make charitable contributions as long as they did not exceed $200,000 annually. The $149,525 contribution, which was made while the defendant was employed, did not diminish the marital assets of both parties. Accordingly, the court should not have included that amount in determining the amount by which the defendant had reduced or dissipated the marital assets.

The court adopted the plaintiff's argument that the defendant had diminished the marital assets by approximately $2.9 million. That amount was determined by taking the total of the liquidated retirement funds, the charitable contributions and defendant's counsel fees. It was incorrect to total those categories because a portion of the liquidated retirement funds was used in part to make charitable contributions. By the court's

reasoning, in effect, any of the liquidated retirement funds that were used for charitable contributions would have been counted twice. On the basis of the record, the court's determination of the amount of assets that were dissipated by the defendant may have been as much as $500,000 too high. As the court noted, however, the total amount of the retirement funds included in the contributions was indeterminable because the defendant refused to comply with several discovery requests to provide clear and accurate financial records.

The court improperly included a portion of the charitable contributions and the retirement funds in the amount that it determined was the defendant's wrongful reduction of the marital assets. On the other hand, the court's finding that the defendant had diminished the marital assets did not fully take into account the 40,635 shares of General Electric stock that he had sold or given away. That factor would offset, to a degree, any amount by which the court improperly determined that the defendant had diminished the marital assets. In determining the impact of the incorrect findings, it is significant that the court's finding was not directly linked to any specific property distribution that was ordered by the court. We note further that the defendant should not be entitled to benefit from the ambiguity that he created by his refusal to provide clear and accurate financial records.

We conclude that the court's findings as to the specific amount of the marital assets that the defendant wrongfully dissipated and the method by which he did so constituted harmless error that did not undermine the financial orders.

B

The defendant also claims that the court abused its discretion in ordering him to pay the plaintiff's counsel

fees. He argues that the court abused its discretion in ordering him to pay $100,000 of the plaintiff's counsel fees because the plaintiff had ample liquid assets to pay her counsel fees, the court did not make a finding that such an award was necessary to preclude its other financial orders from being undermined and that nothing in the record could support such a finding. We agree.

A clear picture of the plaintiff's financial status can be gained by a review of the court's financial orders and her financial affidavit. The plaintiff earned a salary of more than $100,000 a year, possessed significant retirement accounts and had valuable stock options from her employer, General Electric. She was awarded both of the parties' Connecticut residences, which were valued together at more than $1 million, and received a lump sum alimony award of $100,000.

General Statutes § 46b-62 governs the award of counsel fees in dissolution proceedings. It provides in relevant part that "the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ." "Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . Whether to allow counsel fees and in what amount calls for the exercise of judicial discretion. . . . An abuse of discretion in granting the counsel fees will be found only if this court determines that the trial court could not reasonably have concluded as it did." (Citation omitted; internal quotation marks omitted.) *Cordone* v. *Cordone*, 51 Conn. App. 530, 537, 752 A.2d 1082 (1999).

Here, the record does not support a finding that the plaintiff lacked sufficient liquid assets with which to

pay her counsel fees or that the failure to award such fees would have undermined the court's other financial orders. The plaintiff earned more than $100,000 a year, had sizeable investments and was awarded $100,000 in alimony. She also no longer had a need for two residences in Connecticut, as she had purchased the second home when she separated from the defendant. Ample liquid funds, however, are not an absolute litmus test for an award of counsel fees. *Maguire* v. *Maguire*, 222 Conn. 32, 44, 608 A.2d 79 (1992). "[T]o award counsel fees to a spouse who had sufficient liquid assets would be justified, if the failure to do so would substantially undermine the other financial awards." Id. In this case, the court made no such finding that the award was necessary to avoid undermining its other financial orders. Moreover, there is nothing in the record to support such a finding. The court abused its discretion because it could not reasonably have concluded that the plaintiff was not financially able to pay her counsel fees or that the failure to award such fees would undermine the court's other financial orders. Accordingly, we reverse the court's award of counsel fees.

Our Supreme Court and this court "have often described financial orders appurtenant to dissolution proceedings as entirely interwoven and as a carefully crafted mosaic, each element of which may be dependent on the other. . . . Consequently, when an appellate court reverses a trial court judgment based on an improper alimony, property distribution, or child support award, the appellate court's remand typically authorizes the trial court to reconsider all of the financial orders." (Citations omitted; internal quotation marks omitted.) *Smith* v. *Smith*, 249 Conn. 265, 277, 752 A.2d 1023 (1999); *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 424, 479 A.2d 826 (1984). "Every improper order, however, does not necessarily merit a reconsideration of all of the trial court's financial

orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors." *Smith* v. *Smith*, supra, 277. In determining the appropriate remedy, "we focus on the specific language of the trial court's order as set forth in its [decision]." Id., 278. As previously discussed, the court made no finding that an award of counsel fees was necessary to avoid undermining its other financial orders. The plaintiff, moreover, has not requested and presumably would not benefit from a remand in this case which comes to us in the context of its " 'tortured history.' " *Grimm* v. *Grimm*, 74 Conn. App. 407. Because we conclude that the award of counsel fees is severable from the other financial orders, it is not necessary to remand the case for reconsideration of the other financial orders.

The judgment is reversed only as to the award of counsel fees to the plaintiff and the case is remanded with direction to vacate that order. The judgment is affirmed in all other respects.

In this opinion LAVERY, C. J., concurred.

FLYNN, J., dissenting in part. I concur with parts I, II, III and IV B of the thoughtful majority opinion. I respectfully dissent from the holding regarding financial orders in part IV A.

Prior to making its financial orders, the court made findings that from 1998 to 2002, the defendant "reduced" marital assets by approximately $2.9 million. I agree that as to approximately $650,000 of the $2.9 million that the court found was reduced or dissipated by the defendant, the findings were inaccurate. I disagree with the majority's conclusion that this can be rendered harmless on the basis of this court's finding that the trial "court's finding that the defendant had

diminished the marital assets did not fully take into account the 40,635 shares of General Electric stock that he had sold or given away."

"This court cannot find facts or draw conclusions from primary facts found, but can only review such findings to determine whether they could legally, logically and reasonably be found and whether the trial court could thereby conclude as it did. *Appliances, Inc.* v. *Yost*, 186 Conn. 673, 676–77, 443 A.2d 486 (1982); *Hallmark of Farmington* v. *Roy*, 1 Conn. App. 278, 280–81, 471 A.2d 651 (1984)." (Internal quotation marks omitted.) *Parkview Paving Co.* v. *New Haven*, 13 Conn. App. 574, 575, 537 A.2d 1049, cert. denied, 207 Conn. 810, 541 A.2d 1240 (1988). We cannot guess as to the existence of a factual predicate. *State* v. *Hoeplinger*, 27 Conn. App. 643, 647, 609 A.2d 1015, cert. denied, 223 Conn. 912, 612 A.2d 59 (1992). As we stated in *LaVelle* v. *Ecoair Corp.*, 74 Conn. App. 710, 721, 814 A.2d 421 (2003), "[t]his case must be reviewed on the facts found by the trial court." (Internal quotation marks omitted.)

This is not an academic question. For example, the award was disproportionate with respect to real estate apportioned to these two spouses. The court awarded to the plaintiff title to two Connecticut houses that were valued at more than $1 million in the parties' financial affidavits, but allotted to the defendant only an Ohio house worth between $372,000 and $500,000 that was burdened with a substantial mortgage, according to those same affidavits. Financial orders are part of a "carefully crafted mosaic . . . ." *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 424, 479 A.2d 826 (1984). "Normally, when a portion of the court's financial order is found to be flawed, we return the matter to the trial court for a new hearing on the ground that in marital dissolution jurisprudence, financial orders often are interwoven." *Rosato* v. *Rosato*, 77 Conn. App. 9, 20, 822 A.2d 974 (2003). A remand of all financial orders is

unnecessary only when the flawed financial order is severable, in that "it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors." *Smith* v. *Smith*, 249 Conn. 265, 277, 752 A.2d 1023 (1999). In the present case, the erroneous calculation of the amount of marital assets that the defendant was alleged to have dissipated was not severable and was most definitely linked to other factors.

As in *Ehrenkranz* v. *Ehrenkranz*, supra, 2 Conn. App. 423, "[t]he underpinning of the decision is not sound." Because I believe that "[e]ach party is entitled to overall financial orders which reflect the court's discretion and are based upon the facts elicited and the statutory criteria"; id., 424; I would reverse the award as to the financial orders and remand the case for a new hearing on them.