******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KAROL NIETUPSKI *v.* NERIDA DEL CASTILLO
(AC 42003)

Alvord, Elgo and Devlin, Js.

*Syllabus*

The plaintiff sought a legal separation from the defendant, and the defendant
filed a cross complaint seeking to dissolve her marriage to the plaintiff.
The court thereafter entered certain orders pendente lite regarding inter-
national travel and education for the parties' minor child, M. From that
judgment, the plaintiff appealed to this court. Following a trial to the
court, the court rendered judgment dissolving the parties' marriage and
entered certain orders, and the plaintiff filed an amended appeal. *Held*:

1. There was no merit to the plaintiff's claim that the trial court violated
the free exercise clause of the first amendment to the United States
constitution by rendering a judgment of marital dissolution: although
the plaintiff argued that, by dissolving the parties' marriage, the court
violated his right to free exercise of religion, he provided no legal author-
ity to substantiate that assertion, and he did not allege that claim in his
operative complaint or at trial; moreover, following the commencement
of the plaintiff's action, the defendant filed a cross complaint seeking
a judgment of dissolution pursuant to the applicable statute (§ 46b-40
(c) (1)), the constitutionality of which has previously been upheld by
this court and, in light of that precedent, the plaintiff's claim failed.

2. The trial court properly entered orders regarding the education of M and
his ability to travel internationally with either parent as part of its
judgment of dissolution:

a. The trial court did not abuse its discretion in permitting M to remain
enrolled at a public elemenatary school in West Hartford as the record
contained evidence to substantiate the court's factual findings and thus
this court was not left with a firm conviction that a mistake had been
made: the court found that M had made great strides in his educational
development at the West Hartford school, and the court credited certain
testimony from M's guardian ad litem and the defendant that it was in
M's best interest to attend the West Hartford school given its close
proximity to his home, and that the testimony adduced at trial was
consistent with the court's prior findings, which were made in connec-
tion with its pendente lite orders relating to M's education, including
findings that the defendant had worked with special needs children for
ten years as a paraprofessional and demonstrated extensive knowledge
of M's issues and diagnoses.

b. The trial court did not abuse its discretion in permitting M to travel
internationally on vacations with either party: the evidence supported
the court's findings that, because the parties both were born in foreign
lands, M was learning three languages, and the defendant wanted M to
visit her country of origin, Peru, to meet his extended family and to
allow him to immerse himself in her culture, and the plaintiff presented
no evidence at trial indicating that the defendant intended to remain in
Peru with M; moreover, the court credited the testimony of the guardian
ad litem that she supported M's international travel, noting that there
were no travel advisories for Peru and that Peru was a signatory to the
Hague Convention, which provided the plaintiff with an avenue of
redress against the defendant in the event she refused to return to the
United States.

Argued November 13, 2019—officially released February 25, 2020

*Procedural History*

Action seeking a legal separation, and for other relief,
brought to the Superior Court in the judicial district of
Hartford, where the defendant filed a cross complaint
for the dissolution of the parties' marriage, and for other
relief; thereafter, the court, *Prestley, J.*, entered certain
orders pendente lite, and the plaintiff appealed to this

court; subsequently, the matter was tried to the court, *Nastri, J.*; judgment dissolving the marriage and granting certain other relief, and the plaintiff filed an amended appeal. *Affirmed.*

*Karol Nietupski*, self-represented, the appellant (plaintiff).

*Christina Gill*, with whom were *Giovanna Shay*, and, on the brief, *Ramona Mercado-Espinoza* and *Enelsa Diaz*, for the appellee (defendant).

*Opinion*

ELGO, J. The self-represented plaintiff, Karol Nietupski,[1] appeals from the judgment of the trial court dissolving his marriage to the defendant, Nerida Del Castillo. On appeal, the plaintiff claims that the court (1) violated the free exercise clause of the first amendment by rendering a judgment of marital dissolution, and (2) improperly entered orders regarding the travel and education of a minor child.[2] We affirm the judgment of the trial court.

The relevant facts are largely undisputed. The plaintiff is a native of Poland and Polish is his first language. The defendant is a native of Peru and Spanish is her first language. In 2011, the parties were married in East Hartford. Their sole child, Matthew, was born in 2013. During the marriage, the parties resided in Glastonbury, where Matthew attended prekindergarten.

In early 2018, the plaintiff commenced an action for legal separation. In response, the defendant filed an answer and a cross complaint, in which she sought a dissolution of the marriage.

Months later, the defendant filed motions for orders from the court pertaining to Matthew's education and international travel, to which the plaintiff objected and filed responses that proposed alternate orders. The court, *Prestley, J.*, held a hearing on the motions, at which both parties testified. The court also heard testimony from Juan Melian, principal at Charter Oak International Academy in West Hartford (Charter Oak), and Michael Litke, principal at Naubuc Elementary School in Glastonbury. In addition, the guardian ad litem for the minor child testified that (1) she had "no objection" to international travel, and (2) she believed that "either school [in West Hartford or Glastonbury] can address [Matthew's] needs adequately."

On August 9, 2018, the court issued two pendente lite orders relevant to this appeal. With respect to international travel, the court ordered that "each party shall be permitted to travel with [Matthew] to their homes of origin, in Peru and Poland, or on vacation to another country, for up to two weeks vacation time during the year." The court further ordered that Matthew shall attend Charter Oak in West Hartford.[3] From that judgment, the plaintiff timely appealed to this court.

The parties thereafter entered into a parenting plan agreement, which the court adopted as an order of the court. On November 28, 2018, the plaintiff filed what he termed a "request to change child school district." In that pleading, the plaintiff sought an order requiring Matthew to attend public school in Glastonbury, which he alleged was "much higher ranked and safer" than Charter Oak in West Hartford. The defendant filed an objection to that request.

In December, 2018, the court, *Nastri, J.*, held a two day trial on the plaintiff's action for legal separation and the defendant's cross complaint seeking a dissolution of marriage. During his direct examination of the defendant, the self-represented plaintiff asked if she was "fine with legally separating" instead of having the marriage dissolved. The defendant answered in the negative, stating: "No, I need a divorce because [the plaintiff] has abused me emotionally and physically, not just me, but also my son. I cannot be with somebody who's harmed me." The court, as sole arbiter of credibility, was free to accept that testimony. See *Kiniry* v. *Kiniry*, 299 Conn. 308, 336–37, 9 A.3d 708 (2010).

On January 16, 2019, the court rendered judgment dissolving the parties' marriage pursuant to General Statutes § 46b-40 (c) (1), finding that it had broken down irretrievably.[4] The court thus declared "the parties single and unmarried." As part of its judgment of dissolution, the court made numerous factual findings and fashioned various orders. The court found, with respect to educational orders, that the testimony adduced at the dissolution trial "was consistent with Judge Prestley's findings and this court sees no reason to deviate from her conclusions." For that reason, the court denied the plaintiff's November 28, 2018 motion to change Matthew's school district, and instead ordered that "[t]he defendant shall determine which school Matthew attends." The court further ordered that "[e]ach party shall have two weeks exclusive vacation time with Matthew" per year, which "may include travel outside the United States."

On January 23, 2019, the plaintiff filed an amended appeal with this court, which indicated that he was appealing from the January 16, 2019 judgment of dissolution.[5] He filed a motion for reargument and reconsideration in the trial court that same day, which the court subsequently denied.[6]

I

We first consider the plaintiff's claim that the court violated the free exercise clause of the first amendment to the United States constitution by rendering a judgment of marital dissolution pursuant to § 46b-40 (c) (1).[7] That contention is without merit.

In his principal appellate brief, the plaintiff alleges that "[c]ivil laws granting divorce . . . are morally wrong because the state therein usurps an authority to which it has no right whatsoever. It is obvious that the state unlawfully invades an area of religious liberty in which it has no competence when it claims the power to dissolve a marriage lawfully contracted by two baptized persons such contract is a sacrament. Marriage belongs to God." By dissolving the parties' marriage, the plaintiff argues, the court violated his right to free exercise of religion.

The plaintiff has provided no legal authority that substantiates his bald assertion.[8] In his principal appellate brief, the plaintiff alleges that he sought a judgment of legal separation because "divorce is [a] great offense" to his religious beliefs. No such allegation was contained in his operative complaint or advanced at trial. Moreover, the record plainly indicates that, following the commencement of the plaintiff's action, the defendant filed a cross complaint, in which she sought a judgment of dissolution pursuant to § 46b-40 (c) (1).

This court previously has rejected a first amendment challenge in such circumstances. As we explained: "The United States Supreme Court has consistently held that the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes). . . . [Section] 46b-40 (c) (1) is a valid and neutral law of general applicability. The statute does not in any manner infringe on the defendant's right to exercise his religious beliefs merely because it permits the plaintiff to obtain a divorce from him against his wishes." (Citation omitted; internal quotation marks omitted.) *Grimm* v. *Grimm*, 82 Conn. App. 41, 45, 844 A.2d 855 (2004), rev'd in part on other grounds, 276 Conn. 377, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006); see also *Joy* v. *Joy*, 178 Conn. 254, 256, 423 A.2d 895 (1979) (upholding constitutionality of § 46b-40 (c) (1) generally). This court thus concluded that the rendering of a judgment of dissolution pursuant to § 46b-40 (c) (1) "does not violate [a party's] right to exercise his religious beliefs." *Grimm* v. *Grimm*, supra, 46. In light of that precedent, the plaintiff's claim fails.

II

The plaintiff also challenges certain orders entered by the court pursuant to General Statutes § 46b-56 as part of its judgment of dissolution. Specifically, he claims that the court abused its discretion in permitting Matthew (1) to remain enrolled at Charter Oak and (2) to travel internationally. We disagree.

We begin by noting that "[t]he standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either

incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Powell-Ferri* v. *Ferri*, 326 Conn. 457, 464, 165 A.3d 1124 (2017).

A

As the court below observed, whether Matthew would attend school in West Hartford or Glastonbury was a major dispute between the parties. In its memorandum of decision, the court found that, although Matthew was "the least prepared student in his kindergarten class" when he enrolled at Charter Oak, he "has made great strides in his educational development with the individual attention he is receiving and now is almost functioning at grade level." The court expressly credited the testimony of the guardian ad litem, who "recommended that Matthew continue [to attend Charter Oak], primarily because it would not be in Matthew's best interests to uproot him from his current circumstances." The court also credited testimony from the defendant and the guardian ad litem that it was in Matthew's best interests to attend Charter Oak given its close proximity to his West Hartford home.[9] The court further noted that both Glastonbury and West Hartford have "excellent, comparable school systems . . . ."

In addition, the court reiterated Judge Prestley's August 9, 2018 findings that the defendant had "worked with special needs children for ten years as a paraprofessional and was aware of milestones that her child wasn't reaching that caused her concern. She demonstrated extensive knowledge and a real understanding of the child's issues, his diagnoses, and his programming." The court then stated that "[t]he testimony at trial was consistent with Judge Prestley's findings and this court sees no reason to deviate from her conclusions."[10]

The record before us contains evidence to substantiate the court's factual findings and we are not left with a firm conviction that a mistake has been made. Those findings, therefore, are not clearly erroneous. The court's findings provide an adequate basis for the court to conclude that attending Charter Oak was in Matthew's best interest. In light of the foregoing, the court did not abuse its discretion in fashioning its educational orders in the present case.

B

The plaintiff also challenges the propriety of the court's order permitting international travel.[11] At trial,

the plaintiff claimed that travel to Peru is unsafe and that, if Matthew visited that South American country with the defendant, there was a risk they would not return to the United States. He renews those claims on appeal.

It is undisputed that both the plaintiff and the defendant were born in foreign lands. It also is undisputed, as the court found, that Matthew "is learning three languages at the same time—English, Spanish, and Polish" as a result of that heritage. At trial, the defendant testified that she wanted Matthew to visit Peru to "get to know his roots . . . to know who he is as a Hispanic person" and to meet his extended family. The plaintiff presented no evidence at trial indicating that the defendant harbored any intent to remain in Peru with Matthew.

In her testimony, the guardian ad litem stated that she was "in support of Matthew being able to travel internationally." She also testified that there currently were "no travel advisories" for Peru and emphasized that Peru, like the United States, is a signatory to the Hague Convention, which she considered "a protection against [the defendant] just moving to Peru and staying there."[12]

That evidence supports the court's findings that the defendant wanted to take Matthew to Peru "to meet her extended family and to allow him to immerse himself in her culture." The court credited the recommendation of the guardian ad litem, who was in favor of permitting Matthew to travel internationally with his parents. The court further found that Peru's status as a signatory to the Hague Convention provided the plaintiff with an avenue of redress in the event that the defendant refused to return to the United States.

Travel orders involving minor children rest in the sound discretion of the trial court. See *Stancuna* v. *Stancuna*, 135 Conn. App. 349, 354–57, 41 A.3d 1156 (2012). We conclude that the court in the present case did not abuse its discretion in permitting Matthew to travel outside the United States on vacations with either party.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff was initially represented by counsel before the trial court. In this appeal, he appears in a self-represented capacity.

[2] In his principal appellate brief, the plaintiff also argues, in passing, that the court improperly entered a parenting schedule order because the plaintiff "will not see the child during major Christian holidays such as Christmas" and failed to consider a prenuptial agreement between the parties. Apart from those blanket statements, the plaintiff has not briefed those claims in any manner. They are not included in the statement of issues in his appellate brief, in contravention of Practice Book § 63-4 (a) (1). See *Rosenblit* v. *Danaher*, 206 Conn. 125, 136 n.12, 537 A.2d 145 (1988) ("[t]his claim will not be considered because it is not set out in the plaintiff's preliminary statement of issues"). The plaintiff has not provided a separate analysis of those claims, nor has he identified the applicable standard of review as required by Practice Book §§ 67-4 (e) and 67-5 (e). The plaintiff also has

not provided citations to the record or legal authority to substantiate those abstract assertions. We therefore decline to review those inadequately briefed claims. See *Gorski* v. *McIsaac*, 156 Conn. App. 195, 209, 112 A.3d 201 (2015) ("We are not obligated to consider issues that are not adequately briefed. . . . Whe[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . In addition, mere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice." [Internal quotation marks omitted.]).

[3] In issuing that order, the court stated: "With respect to the choice of schools issue, this court has considered the testimony of the parties, their witnesses, the testimony of the school principals and all exhibits entered. In particular, this court has considered the school rankings and finds that each of the schools are excellent and on par with one another. They each use the core curriculum and provide the services necessary for students with an [individual education plan].

"[Charter Oak] is an International Baccalaureate school. It was derived from a [United Nations Children's Fund] model designed to promote peace in the world. It is comprised of a very diverse population, and focuses on topics that celebrate its diverse culture. At least 30 percent of the students at Charter Oak are Hispanic/Latino. Their school offers Spanish and Chinese from prekindergarten on, two times per week, thirty minutes per session. They have a family academy and they celebrate their diversity by including a family component as well. They incorporate six units of study into each grade level that address topics to promote an international focus. They also have programs to address environmental and sustainability issues.

"The Naubuc School in Glastonbury is diverse as well but has a lower Hispanic/Latino population than Charter Oak (16 to 20 percent). The school offers Spanish two times per week, twenty-five minutes per session, beginning in first grade. From second grade on, Spanish is offered here three times per week. Their program does include cultural topics to some extent.

"For this particular child, who is being raised in homes where Spanish and Polish are spoken as a first language, the very diverse program at Charter Oak with its international focus would certainly do more to enhance his educational experience and serve his cultural needs.

"[Also relevant] is the extent of each parent's involvement in the child's educational plan. Although the guardian ad litem testified that she believed that both parents were and would continue to be involved in planning for this child and addressing his needs, it is clearly the mother who has taken the initiative in accessing services such as Birth to Three and therapy for this child. In her testimony, the mother indicated that she worked with special needs children for ten years as a paraprofessional and was aware of milestones that her child wasn't reaching that caused her concern. She demonstrated extensive knowledge and a real understanding of the child's issues, his diagnoses, and his programming. This court is cognizant of the fact that it is not unusual in an intact family for one parent to take the lead in accessing services for their child. And this court does not suggest that the father is any less devoted to his child than the mother. But as a practical matter, the track record of the parties in this area speaks for itself and is certainly a consideration for this court in deciding whose school system the child will attend.

"Finally, while not dispositive, this court has considered the parties' work schedules in its decision. The mother works between 9 a.m. to 4:30 p.m. with an occasional later departure as the need arises. The father was working 4:30 p.m. to 12 a.m. and has now switched his schedule to two hours later. If the child was to attend Naubuc School in Glastonbury, and the father is working from 6:30 p.m. to 2:30 a.m. in West Hartford, as a practical matter, he would not be available to take the child to evening school events. The mother would then be in the position of having to drive to Glastonbury to bring the child to those events.

"In anticipation of this hearing, the mother has met with the principals of both schools under consideration. The father has had one telephone conversation with the principal of Naubuc School. It is clear to this court that the mother has done her homework, has been the driving force behind obtaining services, has a work schedule that is more conducive to allowing this child to fully participate in the school's programs and activities and is in the best position to continue to do so. For these reasons, this court finds that it would be in the child's best interests to attend [Charter Oak] . . . ."

[4] On appeal, the plaintiff does not challenge that factual finding.

[5] We note that "the nature of a pendente lite order, entered in the course

of dissolution proceedings, is such that its duration is inherently limited because, once the final judgment of dissolution is rendered, the order ceases to exist." *Sweeney* v. *Sweeney*, 271 Conn. 193, 202, 856 A.2d 997 (2004); see also *Cunniffe* v. *Cunniffe*, 150 Conn. App. 419, 435 n.11, 91 A.3d 497 ("once a final judgment enters, the pendente lite orders cease to exist because their purpose has been extinguished at the time the dissolution judgment is entered" [internal quotation marks omitted]), cert. denied, 314 Conn. 935, 102 A.3d 1112 (2014). For that reason, an appeal challenging a pendente lite order becomes moot once the marriage is dissolved and a final judgment is rendered. See *Altraide* v. *Altraide*, 153 Conn. App. 327, 332, 101 A.3d 317, cert. denied, 315 Conn. 905, 104 A.3d 759 (2014). In this appeal, the plaintiff does not contest the propriety of the pendente lite orders, but rather challenges the judgment of dissolution and accompanying orders entered by the court on January 16, 2019.

[6] The plaintiff has not appealed from the judgment of the trial court denying his motion for reargument and reconsideration.

[7] In his reply brief, the plaintiff also invokes the protections of article seventh of the Connecticut constitution, in violation of "the well settled principle that claims may not be raised for the first time in a reply brief." *Haughwout* v. *Tordenti*, 332 Conn. 559, 567 n.12, 211 A.3d 1 (2019). He further has failed to provide this court with an independent state constitutional analysis in accordance with *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992), rendering any claim with respect to our state constitution abandoned. See *State* v. *Bennett*, 324 Conn. 744, 748 n.1, 155 A.3d 188 (2017).

[8] The plaintiff's reliance on *Masterpiece Cakeshop, Ltd.* v. *Colorado Civil Rights Commission*,     U.S.    , 138 S. Ct. 1719, 201 L. Ed. 2d 35 (2018), is misplaced, as that case involved first amendment speech rights that were implicated by an individual's religious beliefs. See id., 1728 (appellant's claim was "that he had to use his artistic skills to make an expressive statement, a wedding endorsement in his own voice and of his own creation [which allegedly] has a significant [F]irst [A]mendment speech component and implicates his deep and sincere religious beliefs"). Moreover, in that decision, the United States Supreme Court adhered to established precedent that the "right to the free exercise of religion [may be] limited by generally applicable laws." Id., 1724.

[9] At trial, the guardian ad litem testified in relevant part: "I think [Glastonbury and West Hartford are] both high-end towns as far as Connecticut. I think they're both towns with very good schools and I think that a child would do well in either of the towns. . . . I think that [because Matthew] sleeps every school night at his mother's home [in West Hartford] I think it would be a hardship for him to have four transitions a day if he were to go to [a] Glastonbury school."

[10] The plaintiff also alleges that Charter Oak is an unsafe school and thus jeopardizes Matthew's well-being. The court's memorandum of decision is silent as to that issue. At trial, the plaintiff testified that the doors to Charter Oak "are being left open" and unmonitored. The court heard contrary testimony from Charter Oak Principal Juan Melian, who testified that the school had implemented safety plans that were approved by the director of security for the West Hartford school system in conjunction with the West Hartford Police Department. Melian further testified that monitors always are present at the school's doors and that "[e]veryone" who enters the school "is required to be monitored." As trier of fact, the court was entitled to credit Melian's testimony and reject that offered by the plaintiff. See, e.g., *Leddy* v. *Raccio*, 118 Conn. App. 604, 616, 984 A.2d 1140 (2009) (decision to credit one party's testimony over testimony offered by opposing party "is solely the province of the trier of fact, and we will not interfere with that credibility assessment on appeal" [internal quotation marks omitted]).

It is well established that the appellate courts of this state "do not presume error; the trial court's ruling is entitled to the reasonable presumption that it is correct unless the party challenging the ruling has satisfied its burden demonstrating the contrary." (Internal quotation marks omitted.) *State* v. *Milner*, 325 Conn. 1, 13, 155 A.3d 730 (2017). Because it permitted the defendant to continue Matthew's enrollment at Charter Oak as part of its orders, we presume that the court implicitly found that Matthew's attendance at Charter Oak did not pose a risk to his well-being. In this regard, we are mindful that the court, in dissolving the parties' marriage and entering those educational orders, expressly denied the plaintiff's motion to change Matthew's school district, which was predicated in part on safety concerns. See *Blum* v. *Blum*, 109 Conn. App. 316, 330 n.13, 951 A.2d 587 (trial court's denial of motion "includes implicit findings that it resolved any credibility

determinations and any conflicts in testimony in a manner that supports its ruling"), cert. denied, 289 Conn. 929, 958 A.2d 157 (2008). We therefore conclude that the court's memorandum of decision contains an implicit finding that Matthew's continued enrollment at Charter Oak does not imperil his safety. Such a finding is supported by evidence adduced at trial and, thus, is not clearly erroneous.

[11] In its orders, the court stated in relevant part: "Each party shall have two weeks exclusive vacation time with Matthew during the year. Said vacation time may—but does not necessarily have to—be taken in consecutive weeks. . . . Vacations may include travel outside the United States."

[12] As our Supreme Court has explained, "[t]he Hague Convention . . . establishes the legal rights and procedures for the prompt return of minor children wrongfully removed or kept from their country of habitual residence. Under the Hague Convention, a parent, or other individual or institution, who claims that a child has been wrongfully removed may seek assistance from the 'Central Authority' of any signatory nation in securing the voluntary return of the child. . . . As an alternative, under those circumstances wherein the abducting parent refuses to cooperate, the party seeking the child's return may commence judicial proceedings to obtain an order for the child's return." (Citation omitted.) *Turner* v. *Frowein*, 253 Conn. 312, 332–33, 752 A.2d 955 (2000).